### GOLD v. SOUTH SIDE TRUST CO.

(Circuit Court of Appeals, Third Circuit. May 5, 1910.)

No. 1,351.

1. BANKRUPTCY (§ 467*)—APPEAL—REVIEW—DISCRETIONARY RULINGS.

A ruling, concurred in by both referee and District Judge in an administrative matter in bankruptcy, which is discretionary, will not be reversed by the appellate court, unless unmistakably wrong.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 467.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 467*)—SALE OF PROPERTY—PAYMENT OF BROKER'S COMMISSION—DISCRETION OF COURT.

The action of a District Court, affirming that of a referee, in refusing to allow a commission to a broker for negotiating a sale of property of a bankrupt, will not be reversed on appeal, where there was no contract by the trustee to pay for the service, but, on the contrary, the trustee refused to make a contract, and told the broker that, if he desired a commission, he would have to present a petition to the referee or the court, which he did not do prior to the sale.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 467.*]

Archbald, District Judge, dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of Frank Torchia, bankrupt. From an order of the District Court, refusing the petition of Jacob Gold, he appeals. Affirmed.

The following is the report and opinion of Blair, Referee:

On November 19, 1909, Jacob Gold filed his petition, setting forth that he "succeeded" in selling to A. Ricordino a certain lot of ground belonging to the bankrupt's estate in the city of Pittsburg, fronting 54 feet on the southerly side of Webster avenue, and running back 110 feet; that the highest price bid for said property at public sale was $17,000, and that petitioner succeeded in getting for the same the sum of $34,000, after working at the same for over three months—and asking the referee to award him 2 per cent. commission on said sum of $34,000. This the referee refused to do, and thereafter, on November 26, 1909, a petition for a certificate of said ruling of the referee was presented, and upon certain statements of counsel, made at the time of presenting the said petition for a review, the referee ordered a rehearing of the matter, and thereupon, on December 2, 1909, a hearing took place before the referee at his office in the city of Pittsburg, at which certain testimony and evidence, a true and correct transcript of which is herewith filed, was presented to the referee.

From the testimony and evidence in the case it appears that the petitioner, Jacob Gold, is a real estate broker in the city of Pittsburg. About four months ago, or some time in the last summer, he called upon Mr. Page, president of the South Side Trust Company, the trustee in the case, and he says that Mr. Page told him to sell the lot above mentioned, and that he would get a commission. He further states that the commission was then and there agreed upon as $680. He afterwards qualifies this, of course, by saying it was 2 per cent. He further testifies that he interested one Ricordino, the purchaser of the property, in the purchase thereof, and in this he is corroborated by Ricordino's bookkeeper, and to some extent by Mr. Page, the president of the South Side Trust Company, the trustee in this case. His testimony is to the effect that there was an agreement by Mr. Page that he should have a commission of 2 per cent.; but his own testimony as to this is by no means as clear as it ought to be, and hardly goes further than that his understanding was that he was to get 2 per cent. On the other hand, Mr. Page, who appeared as a witness before the referee, and who frankly stated that, if the petitioner were entitled to it, the trustee had no objection to his receiving it, says that when Mr. Gold came to him he told him distinctly that the trustee would not agree to pay him any commission whatever, and that if he wanted a commission he must apply to the court and obtain an order authorizing the payment of any such commission. This Gold did not do, but now comes on an implied contract or quantum meruit from this estate.

The weight of the testimony, as already stated, shows that there was no express contract on the part of the trustee to pay him a commission, and the question is whether, without such express contract, and without a previous order authorizing such commission, the petitioner is entitled to a commission on the sale of a bankrupt's real estate, which had been advertised for sale, and upon which bids had been publicly made to the trustee. The referee is of opinion that, upon sound principles, this claim must be refused. While it may be that in the given case the bankruptcy court would feel justified in employing an agent, sound policy forbids that claims of this kind, based upon services alleged to have been rendered in procuring purchasers, and brought to the attention of the court in the first instance after the sale, should be permitted. A bankrupt's property is always for sale, and, so far as the estate is concerned, the services of an agent ordinarily are in no way required, and the law designates the agent who shall make the sale, namely, the trustee of the estate. The opportunity which the recognition of such a claim as this would afford for fastening upon estates alleged claims of brokers and agents led the referee years ago to instruct trustees that they were to make no con-

tracts with agents for commissions in the sales of property of estates in their hands, and that, if they did so, they undertook a serious personal responsibility in making such contracts. If an agent is to be employed by a trustee, whose duty it is to make the sale, his employment should be approved by the court before the services are rendered. Even in the case of a private owner, an agent must show a contract, express or implied, with the owner, before he can recover. In this case it is difficult to see how the bankruptcy court would have authorized the commission claimed. The record in the case discloses that the real estate of the bankrupt is subject, in addition to specific liens on each property, to general liens of judgments, etc., to an amount approximating $100,000. Any commissions authorized would have to be paid out of the purchase money, which might be a great injury to lien creditors, or, if not, out of the general estate, an even greater injury to the unsecured creditors.

The referee is of opinion that the petition in this case should be refused.

Lowrie C. Barton, for appellant.
James L. Wehn, for appellee.

Before BUFFINGTON, Circuit Judge, and ARCHBALD and CROSS, District Judges.

BUFFINGTON, Circuit Judge. This is an appeal by Jacob Gold from an order of the bankrupt court confirming a report of a referee which rejected a claim of said Gold. The case arose on a certified question, viz.:

"Whether, under the facts set forth in the petition of Jacob Gold, and the testimony and evidence thereunder, the petitioner is entitled to have allowed him the sum of $680 as commission on the sale of certain real estate."

The petition of Gold set forth that he was a licensed real estate broker; that the highest price bid for the bankrupt's property was $17,000; that "your petitioner succeeded in getting for the same the sum of $34,000, after working at the same for over three months." There was neither proof nor allegation of any contract to pay on the part of the trustee, or any application to the referee for allowance for prospective service. In the absence of such contract or allowance, was the court in error in sustaining the refusal of the referee to allow fees? Clearly not. No legal liability existed, and, while it may be that under the facts here disclosed the referee might have allowed compensation, such allowance would be an exercise of discretionary power, and not an enforcement of legal rights. Indeed, the counsel for the appellant conceded at the argument in this court that the allowance of this claim by the court and referee was discretionary. Such being the case, and although there may be merit in the appellant's contention, we are strongly averse, unless it clearly appears wrong was done, to reversing a ruling concurred in by both referee and District Judge in an administrative matter. If abuses threaten to creep into bankrupt procedure, those charged with local administration are in better position to prevent such abuses than are appellate tribunals. It follows, therefore, that in such matters the court's action should not be reversed, unless unmistakably wrong.

Now in this case the appellant had no one but himself to blame if he is not paid for services he rendered. In common with a large number of brokers in the city, he received from the trustee a circular

letter calling attention to this property. In response thereto he met the trustee, was encouraged to sell, and a commission of 2 per cent. was talked about; but, as he testifies, the trustee did not hire him to sell, and expressly told him that he "would have to present your petition to the referee, or the court, in case you wanted any commission in the matter." The testimony of the trustee's officer was:

"Q. What arrangements did you make with Mr. Gold, if any, with reference to this commission? A. I am not sure that anything was said about commission, but the first talk I told him we could and would not agree to pay him any commission—we could and would not pay any commission, but he would have to present a petition to the court; and I said, 'In the event, if you would get a commission, what commission would you want?' and he said, 'Two per cent.' We never made any agreement to pay him 2 per cent. or any amount, and I admit I think his efforts resulted in the sale; but I never agreed to pay him any commission, but he would present his petition here. As to whether he was to be paid, it was simply that the trustee would not pay; but, if the court would allow him a commission, he would ask for 2 per cent."

Had he made the application suggested, the lien creditors, who were entitled to the proceeds of the sale of this real estate, would have had notice, and all dispute and uncertainty avoided. But in spite of the warning, and without making the application suggested, the broker went ahead. He was not only a volunteer, but a volunteer with warning. If under such circumstances he had a right to collect for his services, or the bankrupt court should allow them, we can well see a dangerous precedent might be set. In view of that possibility, we think it unwise to disturb the joint action of judge and referee.

The appeal is therefore dismissed.

ARCHBALD, District Judge (dissenting). This is not, in my judgment, a matter of discretion. The petitioner has a valid claim against the bankrupt's estate for services performed as a duly licensed real estate broker, undertaken at the instance of the trustee, by which the estate was materially benefited; and the court was bound to recognize and allow it. After the property had been twice put up at public sale, at which $17,000 was the best bid that could be obtained, the trustee sent circular letters to a number of real estate brokers of Pittsburg, including the petitioner, soliciting their assistance in procuring a purchaser; and after several months' work the petitioner succeeded in interesting a responsible party and getting him to give the price which the trustee demanded, $34,000, at which the property eventually was sold to him. It was understood that the petitioner's claim for commissions would be 2 per cent. on the amount realized, which the trustee assented to as reasonable, provided the court approved it. It is no doubt true that the trustee did not bind himself to pay that amount, and, indeed, could not, except conditionally; the approval of the court, as in every case, being essential. But subject to this condition the validity of the claim was recognized, and the court in justice was bound to ratify it. The claim was called to the attention of the referee before the sale had been finally confirmed, and it is not, therefore, as though it came in afterwards in reduction of the price at which the sale was reported. If this was a case between individual

parties, there would be no question as to liability; and the bankruptcy court ought to be as ready and as much bound to recognize its obligations as an individual. The petitioner was not a volunteer. He acted by direct solicitation, the trustee seeking to avail itself of the facilities of the brokerage business in which he was engaged; and his efforts were most successful, the price obtained through his action being double that which had been bid at public sale, $17,000 additional—a very material advance—being secured by means of them.

The reasons given by the referee for rejecting the claim are far from satisfactory. He seems mainly to rely on the policy which he has adopted, and the rule which he has laid down in pursuance of it, by which he requires trustees to get authority in advance when the assistance of brokers is desired in making sales of real estate. No doubt the rule, as a rule, is a good one, and may properly be invoked to protect bankruptcy estates against inroads, to which they might otherwise be open. But judgment, after all, is to be exercised, and the rule is not to be applied indiscriminately to throw out claims of merit. A policy is not to be pursued as a hard and fast rule where it works injustice. It seems to be implied by the referee that, as trustees are the agents designated by the law to make sale of real estate, they are themselves to hunt up purchasers; but they are entitled to the assistance of counsel to guide them legally, and may employ an auctioneer to cry their sales without question; and why, then, may they not avail themselves in a proper case of the experience of real estate men to help dispose to advantage of the property? They certainly are not called upon to drum up bidders; and if they are not to be allowed to get such assistance, bankruptcy estates are likely to suffer, as would have been the case in this instance, rather than the opposite. Even, therefore, on the basis that the allowance of this claim is discretionary, the referee has practically refused to exercise his judgment with regard to it, disposing of it on immaterial issues, rather than a consideration of the merits.

To affirm this decree, in my judgment, would work an injustice in order to support a policy, and I therefore dissent from it.