SARTORIUS et al. v. BARDO et al.
No. 219.

Circuit Court of Appeals, Second Circuit.
March 21, 1938.

388

Hiram S. Gans, of New York City, for appellants.

Graham, McMahon, Buell & Knox, of New York City (William H. Hall, of New York City, of counsel), for appellee Bardo, trustee.

Alexander & Green, of New York City, and H. J. Wells, of New Haven, Conn. (Edward W. Bourne, of New York City, of counsel), for appellees Palmer and others, trustees of the New York, New Haven & Hartford R. Co.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up on two appeals; one, of a committee of the first mortgage bondholders of the debtor, New York, Westchester and Boston Railway Co.; the other, of their counsel; each appeal is from two orders of the district court, the first, disallowing petitions for allowances and disbursements; the second, refusing to permit the petitioners to supplement their proof. The debtor is an intrastate railway, and therefore not within section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205 and note; on November 13th, 1935 it filed a petition for reörganization under section 77B; this the judge at once approved and later appointed the appellee, Bardo, trustee. The committee at bar had been formed before petition filed to represent the bondholders, and they were allowed to intervene in the proceeding. They prepared a reörganization plan at considerable labor and expense, but were never able to get it accepted by enough of the bondholders to present it to the court for confirmation. After the proceeding had gone along for nearly eighteen months without progress, the judge on April 29, 1937, concluded that there was no reasonable expectation of its success, and ordered it dismissed, since under subdivision (c) (8), § 77B, 11 U.S.C.A. § 207 (c) (8), the debtor, a railway, could not be liquidated in bankruptcy. A creditors' bill had meanwhile been filed in the District Court for the Southern District of New York, and the final order in this proceeding directed Bardo, the trustee, to turn over the assets to receivers appointed therein. That order also permitted some of the claims against the debtor to be compromised, made allowances to Bardo and his attorneys, and denied them to all other parties, including the committee and its counsel.

During the pendency of the proceeding, and while it was still thought that a reörganization might be possible, the committee had been active, not only in preparing the plan, but in the administration of the debtor. On April 14, 1936, the trustee asked leave of the court to satisfy or assign a mortgage executed to the debtor by the Scarsdale Supply Co., on which the unpaid principal was $22,000, secured by property which had cost $63,000. The amount offered was only $17,500 and the committee successfully opposed the application. Later the trustees in reörganization of the New York, New Haven & Hartford Railroad, took over this mortgage at its face value as part of a set-

tlement of the road's claims against the debtor; the committee demands some allowance for its service in preventing the trustee from selling at the lower price. The only other item of importance for which they wish to be paid is their services in aid of the settlement just mentioned. At the invitation of the trustee, they and their attorney participated in the preliminary negotiations during the spring of 1937 which led up to this, and continued down to August when the matter was concluded. The New Haven Railroad, which held substantially all the shares of the debtor, had lent it large sums, and had helped it in other ways; its claims in this proceeding were of three sorts: first, loans for operation made within six months of November 30, 1935, when this proceeding was begun, as to which the road's trustees claimed priority: second, a much larger amount of older loans, concededly only general debts: third, a claim for the use and occupation by the debtor of the Mamaroneck-Portchester Line, owned by the road. The committee asserts that they secured reductions in all of these claims, which, as we have just said, were settled in part by transfer of the Scarsdale mortgage. Finally, they asked reimbursement for their expenses in making ready the plan, especially those resulting from the employment of accountants and engineers (we cannot see that these stand upon a different footing from their putative allowance, or their attorney's). After the judge had denied the application in the final order, which terminated the proceeding, the appellants asked him to allow them to supplement their evidence by showing what they had done since the date of the first application. This he also denied.

■ A proceeding under section 77B seeks the rehabilitation of the debtor, and can have no further purpose; as soon as it appears that this is impossible, subdivision (c) (8) declares that the court "may" dismiss it, or proceed to liquidation. When either happens it becomes plain that the whole proceeding has benefited no one, just as the judge here declared. Possibly it might indeed be desirable to make some allowance, win or lose, to creditors who prepare a plan, since the hazard of going empty-handed if it fails, may deter them from preparing one, which might in the end prove successful. Moreover, a petition under section 77B in some sense invites creditors to propose a plan; and

they do not do so wholly in their own interest, for, if accepted, all will profit. Nevertheless, those creditors who do not join with them in the preparation cannot be said to have authorized them to act on their behalf; they may be indifferent to the whole proceeding. If so, they can be equitably compelled to contribute only in case they profit by it; and they cannot profit by it, if it fails to go through. Therefore, those who take the initiative in preparing a plan are necessarily volunteers, and like other volunteers, must accept the hazard of failure. This does not depend upon the language of subdivision (c) (9), § 77B, 11 U.S.C.A. § 207 (c) (9)—"in connection with the proceeding and the plan"—which verbally may be broad enough; it follows from the nature of the proceeding, and from the theory of it, which coërces recalcitrant creditors only upon conditions which by hypothesis are not fulfilled. Indeed, in Re Nine North Church Street, 2 Cir., 89 F.2d 13, we denied any allowance to a creditor who had defeated an accepted plan. His position was stronger than the committee's here; for it might well be said that he had prevented an unfair or impracticable plan from being foisted upon the creditors and that that was a benefit to all. Those who propose an unsuccessful plan have less claim upon the debtor than he; and those whose plan does not secure the required consents have still less. For this reason the committee's efforts must be understood to have been on behalf of those creditors for whom they acted and to whom alone they may look for payment. It is true that in Oakland Hotel Co. v. Crocker First National Bank, 85 F.2d 959, the Ninth Circuit affirmed an allowance made to the attorneys of the proponents of an unsuccessful plan; but the appellants did not "seriously press the point" and the interpretation put upon subdivision (c) (9) was scarcely the deliberate ruling of the court. So far as we can find, the question has come up elsewhere only twice, and in the district courts; each time the ruling was in accord with our views. In re Manhattan Music Hall, D.C., 14 F.Supp. 48, 55–57; In re 2747 Milwaukee Avenue Building Corporation, D.C., 12 F.Supp. 557.

■ The other services for which the committee asks to be paid are their assistance to the trustee, pendente lite. We have often held that when property is in the

hands of a receiver or trustee, he alone will be recognized as its administrator, and he alone will be paid for any services rendered in the care of the property, in its disposition or in contesting claims. The services of those who choose to help him in these duties, even at his invitation, will be treated as rendered in their several interests alone and not for the estate, unless they present to the court in advance their pretension to represent it, showing some reason why the trustee's unaided efforts will not serve. If the court then recognizes them, they become trustees pro hac vice, and can be paid; not otherwise. Davis v. Seneca Falls Mfg. Co., 2 Cir., 17 F.2d 546; In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95; In re New York Investors, 2 Cir., 79 F.2d 182; In re Paramount Publix Corporation, 2 Cir., 85 F. 2d 588, 591; Id., 2 Cir., 85 F.2d 592; Id., 2 Cir., 85 F.2d 593; Id., 2 Cir., 85 F.2d 595. It is true that in the first Paramount Publix Case, supra, we said that there might be occasions when it was not necessary to get a formal order; there may perhaps be circumstances giving a creditor warrant for supposing that the bankruptcy court had already consented to his acting for the estate. That will be a very rare situation; especially, since it is always easy to clarify the matter in limine. Anyone who does not choose to do so assumes an extremely heavy burden in asserting that he had the court's informal assent. The cumulation of such allowances under the supposed authority of subdivision (c) (9) would be a grave abuse, against which we have set ourselves rigidly; we have no disposition to relax.

In the case at bar the committee could therefore receive nothing for any services rendered in the compromise of the New Haven Railroad claims. The same is not true, however, of their opposition to the application to sell the Scarsdale mortgage; obviously if a creditor successfully opposes a proposal of the trustee, it is no answer to his demand for payment to say that the trustee was in charge; by hypothesis his intervention was necessary. Hence the judge would not have been justified in denying this part of the petition, if any substantial advantage could be traced to the services. None can; although the mortgage went into the settlement with the New Haven Road at par, we do not know at what discount the claims themselves were computed. Besides, even if

it appeared that the debtor had received the full difference between the mortgage and the cash offer, only a trifling allowance could have been made.

The refusal to allow the committee to supplement their proof was certainly within the judge's discretion.

Orders affirmed.