In the Matter of **SAPPHIRE STEAM-SHIP LINES, INC.,** Bankrupt.

**No. 67 B 252.**

United States District Court,
S. D. New York.
March 15, 1974.

Louis P. Rosenberg, Brooklyn, N. Y. for J. Read Smith, Trustee.

Paul J. Curran, U. S. Atty. S. D. N. Y., by T. Gorman Reilly, New York City, of counsel.

Sher & Harris, Washington, D. C., for Joseph L. Alioto, Special Counsel to the Trustee.

Joseph L. Alioto, San Francisco, Cal., pro se Special Counsel to the Trustee; by Robert A. Radnick, Jr., and Robert E. Sher, Washington, D. C., of counsel.

Szold, Brandwen, Mayers & Altman, New York City, for Patton, Boggs & Blow (formerly Patton, Blow, Verrill,

Brand & Boggs, and theretofore Barco, Cook, Patton & Blow), Former Special Counsel to the Trustee; by Roy Gainsburg, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for E. Bergendahl Co., Inc. (New York) and E. Bergendahl Co., Inc. (Philadelphia), Creditors; by Terence H. Benbow, Victor S. Trygstad, and Steven A. Berger, New York City, of counsel.

## OPINION

POLLACK, District Judge.

In this bankruptcy, a specific fund of $2,473,070.12 has been brought into the Estate through a settlement of an anti-trust action prosecuted for the benefit of the Estate. The present issue relates to allowances of compensation to be assessed for creation of the fund and paid by the Estate to those whose services are said to have brought about the benefit, in whole or in part.

On February 8, 1974, the Bankruptcy Judge [Referee in Bankruptcy, heretofore] issued a Certificate on Allowances recommending to this Court that fees and disbursements be awarded herein to Joseph L. Alioto, Esq. and his predecessor who acted as Special Counsel to the Trustee. The recommended fee is $369,626 and the disbursements are $28,070.12. The Bankruptcy Judge has recommended against a claim for an allowance to Winthrop, Stimson, Putnam & Roberts, Esqs. who represent two creditors herein and claim to have contributed substantially to the creation of the fund in Court. The Bankruptcy Judge seemingly doubted that he had power to recommend any award to them and said they "must look to their clients for compensation and cannot be allowed any compensation from this estate", citing among other authority, Sartorius v. Bardo, 95 F.2d 387 (2d Cir. 1938) (L. Hand, C. J.).

The Bankruptcy Judge also disallowed compensation at this time to the attorneys for the Trustee for services related to the creation of this fund, on two grounds: (1) that a payment for such services by the Special Counsel for the Trustee out of his allowance would be legally improper and a sharing agreement therefor could not be honored, and (2) that the Trustee's "compensation will be determined when the case is concluded" and any services rendered in connection with the anti-trust suit will be taken into consideration at that time.

■■ It appears that the Bankruptcy Judge did not give effect to overriding equitable principles which are applicable to the special facts herein that require payment of compensation for services rendered for the benefit of all creditors as a class. Moreover, again on equitable principles, an interim allowance to the Trustee's counsel payable out of the particular fund could and in these circumstances preferably should also have been considered at this time apart from any separate ultimate claim for other general services as attorneys for the Trustee to be evaluated when the case is concluded. The true value of such services can be gauged without waiting for the termination of the proceedings generally. The determination of the net recovery for the Estate, net of the fees and disbursements payable for the creation of the fund, ought reasonably be related to and be a current part of the settlement itself as a matter of judicial husbandry. Since the overall allowances payable for the creation of a fund must be viewed as against the amount of the benefit, all applicable claims for fees properly assessable in relation to the benefit ought to be determined at the same time and in the perspective of the grand total to avoid any distortion that might arise from separate or staggered determinations.

The prior proceedings in this matter so far as pertinent here were as follows.

Prior to bankruptcy, Sapphire Steamship Lines, Inc. instituted an anti-trust action to recover $12-million as treble damages from a number of steamship lines and transport companies, for alleged violation of the anti-trust laws by

alleged conspiracy to fix freight rates and monopolize the trade. After bankruptcy intervened the Trustee was substituted as plaintiff, and was duly authorized by court order to retain Joseph L. Alioto, Esq. as Special Counsel to the Trustee to prosecute the action. After considerable procedure, an offer was received in about July 1970 to compromise the action for a total of $1,600,000. Upon due notice to creditors of a hearing to consider the proposed compromise, and over the objection of a number of creditors as well as the United States Attorney on behalf of the government, the Referee in Bankruptcy entered an order dated September 29, 1970 authorizing the Trustee to compromise the action by accepting $1,600,000 and authorizing him to execute all the necessary legal documents to consummate such a settlement.

In support of the settlement proposed, the Special Counsel to the Trustee furnished a report letter of July 16, 1970 to the Trustee's attorney stating among other things that "it is clear to the members of this office that the settlement agreements entered into with the defendants in this litigation represent a fair and favorable settlement of the Bankrupt's outstanding claims against said defendants. We, therefore, request that you seek the Court's approval of these agreements."

The Referee's decision approving this compromise dated September 21, 1970 recited, *inter alia,*

Special counsel has given what I find to be adequate reasons to doubt the probability of success, or even if successful, that a judgment would exceed $1,600,000, especially in the district where the action is pending.

.   .   .   .   .   .

The only thing which has given me pause, is the views of the creditors. I would indeed like to honor those views if I could find justification therefor. But I can find no such justification .   .   . It seems to me that in this instance I must exercise an independent judgment based upon the full and complete disclosures made by the trustee and his special counsel, albeit my conclusion is at variance with the wishes of the objecting creditors. I therefore accept the recommendation of the trustee, his general counsel, and his special counsel, and I approve the compromise.

Thereafter, the United States of America and two creditors in this proceeding, the Bergandahl companies, objected to the compromise and jointly moved for reconsideration of the Referee's order of September 29, 1970 and for a rehearing on the proposed compromise. Opposing this application, the Special Counsel's partner filed an affidavit reciting that "I see nothing in this presentation which is new or which alters my strong conviction that this is a favorable settlement offer which should be accepted by the Trustee .   .   . I am certain that if attorneys from their offices familiar with anti-trust cases were to devote the time required to make a full study of this case, as we have done, they, too, would conclude that this is an excellent settlement."

On the basis of the analyses and presentation of those moving for a rehearing, the Referee found however, that "[t]his now paints an entirely different picture from that presented when the compromise first came on for hearing." The Referee granted the motion for reconsideration and thereupon disapproved the compromise and vacated his order of September 29, 1970. Objecting to this rejection of the compromise, the Special Counsel to the Trustee and the attorney for the Trustee moved for reconsideration and rehearing. They contended that the Referee had applied an erroneous legal standard in rejecting the proposed compromise and had erroneously accepted as factually correct the representations contained in the creditors' papers and the conclusions based thereon. The Special Counsel again set out his reasons at length for approval of the $1,600,000 compromise offer.

In a decision dated May 24, 1971, the Referee adhered to his decision of December 18, 1970 disapproving the compromise. The Referee stated:

. . . a compromise, which after payment of the fee of special trial counsel and bankruptcy administration expenses would leave nothing for general creditors ought not, in the face of strong objection, be approved.

Special Counsel then advised the Referee that he had decided not to appeal this decision "[u]pon consideration of all facts".

However, the defendants in the antitrust law suit obtained an order from the trial judge in the District in which the suit was pending directing the Trustee to file a petition for review of the Referee's order of disapproval of the $1,600,000 offer in compromise. Accordingly, under date of June 16, 1971, counsel to the Trustee filed a Petition for Review and a supporting brief by the Special Counsel with this Court in which they stated in substance that Petitioner was aggrieved by the order of the Referee denying approval of the compromise; that disapproval was not in the best interest of the Bankrupt Estate and that the objectors had failed to establish that the compromise was unreasonable and not in the best interests of the Estate. On review, 339 F.Supp. 119, Judge Lasker of this Court ruled that "[i]t was not an abuse of discretion on his [the Referee's] part to disapprove the compromise, and the petition to review his order is denied."

The opponents of the first settlement offer and the government and the Special and general counsel for the Trustee thereafter put their collective shoulders to the wheel, and as the case progressed closer to actual trial, new negotiations yielded a 50% increase in the amount of the disapproved offer in compromise.

In 1973, an offer was presented to the Trustee for a settlement involving a total of $2,473,070.12. This was made up of three components; $1,700,000 was to be paid by the "Trade" defendants, $300,000 was to be paid by so-called "Non-Trade" defendants and the "Trade" defendants were to pay Mr. Alioto and associates their fees and expenses of $473,070.12. A petition was filed with the Referee for approval of the offer as thus cast by the proponents. The Referee issued two orders; one, upon the Trustee's petition under date of May 18, 1973 ordering a meeting of creditors to be held on July 2, 1973 to consider and act upon the offer by the "Non-Trade" defendants, in the amount of $300,000; the other, under date of June 25, 1973, ordering a meeting of creditors to be held before the Referee on July 16, 1973 to consider and act upon the offer of compromise and settlement proposed by the "Trade" defendants, *viz.*, the sum of $1,700,000 plus $473,070.12 for legal services and disbursements. The two hearings were consolidated.

Although the Special Counsel had negotiated for a fee to be paid by third parties separately from the amount of the payment into the Estate, upon being advised by the Referee that such practice was violative of the Bankruptcy Act, the Special Counsel had agreed that the full amount of $2,473,070.12 be paid into the Estate and that his compensation be fixed by the Court.

In a decision dated October 16, 1973 the Referee approved the new proposals of settlement which enhanced the Bankrupt Estate by $873,070.12 over the settlement that had been negotiated in 1970. Although there was opposition to the 1973 proposals of settlement, no appeal was taken thereafter by anyone from the Order entered in conformity with the Referee's decision and the time to appeal has expired.

From the time of their opposition to the 1970 offer of compromise and throughout the proceedings in the following years the firm of Winthrop, Stimson, Putnam and Roberts undisputably rendered services inuring to the benefit of the creditors of the bankrupt Estate as a class and which contributed to the enormous enhancement of the Es-

tate that was achieved. No measurement of their contribution or its value has been made by the Bankruptcy Judge in his Certificate.

■ The Referee has passed upon the application of Joseph Alioto, Esq. and his predecessor and has recommended compensation to them described as approximately 15 percent of the total amount recovered.[1] Winthrop, Stimson, Putnam & Roberts, Esqs., who appeared on behalf of the Bergandahl companies, sought an award for their services of $175,000 and disbursements of $3,000, or approximately 20% of $873,070.12, the amount by which the offer objected to was increased. The Referee rejected their application, stating that these attorneys cannot take *full credit* for the disapproval of the first offer because the Referee was impressed with evidence produced by Internal Revenue Agents who were put to work on the case by the government (more properly a factor to be weighed in ascertaining the *size* of a fee) and moreover, as a matter of law, that since these attorneys were not acting as attorneys or special attorneys to the Trustee nor had any order been made authorizing them to act for the Trustee in any capacity whatsoever, "what they did, they did for their clients; their clients will reap the benefit of their services; they must look to their clients for payment." The Referee cited General Order 44 promulgated by the Supreme Court and New Bankruptcy Rules 215(a), 411 U.S. 989, 1036 (1973), both providing that "No attorney or accountant *for* the *trustee* shall be employed except upon order of the court," and In re Siegel, 41 Am.Bankr.R. 753 (S.D.N.Y.1918) (L. Hand, D.J.), and Sartorius v. Bardo, 95 F.2d 387 (2d Cir. 1938 (L. Hand, C.J.).

Unquestionably, the services of Winthrop, Stimson, Putnam & Roberts went beyond their representation of the interests of individual creditors. The values ultimately recovered for the Estate over the resistance of the Special Counsel as well as the Trustee and over the initially approved compromise of $1,600,000 went enormously beyond what the Special and general Attorneys for the Trustee had accomplished for the Estate.[2] The government has acknowledged the important association of the Winthrop, Stimson firm in the opposition to the initial settlement and the creation of the new settlement. Yet, seemingly the Special Attorney for the Trustee alone has benefited fee-wise from the increase since he has been allowed a percentage against the *entire total*. (*See* footnote 1 *supra*). Fees to others responsible in various measures for the enhancement have been rejected or deferred on grounds that do not appear equitable in the special circumstances here.

■■ The test for the granting of any allowance should usually be whether the services for which compensation is sought have been of benefit to the Estate in its conservation or administration. This includes all expenses of realizing property for the Bankrupt. The Court is empowered to allow reasonable compensation and reimbursement for expenses to parties and interests, including representatives of creditors where, as here, the services go far beyond what could be ascribed to the protection of individual creditor's interests.

■ Where lawyers through action on behalf of all the members of a class of interested parties contribute services through which a fund is realized for distribution to the members of that class, they are entitled to an allow-

---

1. It should be noted that, at one point, Special Counsel agreed to limit his application for fees to the fees which he would have claimed if the earlier offer of $1,600,000 had been approved by the Referee. Apparently, he later withdrew this concession when it became manifest that he would be required to participate in the rendition of additional services.

2. The record contains a number of affidavits of support for Winthrop, Stimson's fee application from creditors who would equitably bear the burden of any fee awarded to Winthrop, Stimson. There is no opposition to such an award on the record before the Referee, or before this Court.

ance out of the fund so created on the theory that those who accept the benefits of such services must also assume a share of the expenses connected therewith. This rule is also applicable in bankruptcy. Such allowances are to be made as part of the Court's authority to do equity in a particular situation. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Here the objections to the initially approved settlement resulted in an additional fund of well over $800,000. It would be inequitable as well as unrealistic to say that this result was compensable to the objecting attorneys only by the two creditors whom they represented and whose equitable interest in the benefit was only a small fraction thereof.

■ Although the "general American rule" is that attorneys' fees are not ordinarily recoverable as costs, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), there are recognized "exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit . . . that benefits a group of others in the same manner as himself. . . . To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." Id. at 391–392, 90 S.Ct. at 625. (footnote omitted) (citation omitted).

The most common application of this principle is to cases where the efforts of one party "result in the creation of a fund that benefits others." Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., 481 F.2d 1045, 1057 (2d Cir. 1973), citing Sprague v. Ticonic National Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); accord, United States v. American Society of Composers, Authors and Publishers, 466 F.2d 917, 919 (2d Cir. 1972); Nolte v. Hudson Nav. Co.,

47 F.2d 166 (2d Cir. 1931) (L. Hand, Swan & Chase, C.JJ.). Moreover, this concept is not alien to the field of bankruptcy. See In re New York Investors, Inc., 130 F.2d 90 (2d Cir. 1942) (L. Hand, A. Hand & Clark, C.JJ.).

The Court of Appeals has stated its "strong reluctance to allow the assessment of any fees and costs in bankruptcy proceedings which are not expressly authorized by the Act, *or that are not well established by judicial precedent. . . .* And as a general rule no compensation or reimbursement can be had *unless a tangible benefit has been conferred on the estate to the advantage of the creditors as a whole,"* Saper v. John Viviane & Son, Inc., 258 F.2d 826, 828 (2d Cir. 1958) (emphasis supplied), although "these principles are not without exceptions." *Id.* In the present case, there is no question but that a tangible benefit has been conferred on the Estate as a whole.

Accordingly, the Bankruptcy Judge's reliance upon the fact that Winthrop, Stimson was never expressly authorized to act as attorney or Special Attorney for the Trustee is misplaced, especially in light of Justice Frankfurter's injunction that "when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation . . . hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation." Sprague v. Ticonic National Bank, *supra*, at 167 of 307 U.S., at 780 of 59 S.Ct.; *accord*, United States v. American Society of Composers, Authors and Publishers, *supra* at 919 of 466 F.2d (attorneys not foreclosed from recovery on their claim because of the absence of any formal indications that they prosecuted the action as a class action); Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., *supra*, at 1057 of 481 F.2d (fact that "adversary" counsel did not sue on behalf of class for whose benefit he created a fund presents no bar to allowance out of that fund). As the Court of Appeals has recently observed "[t]he relevant factor is the creation of the

fund, not what Justice Frankfurther [sic] termed 'the formalities of litigation.'" *Alpine Pharmacy, supra,* at 1057.

It is thus apparent that "the court, in holding as a matter of law that it was without the power, denied the petitioners a right they had to have it exercise its discretion in the matter of whether or not to make an allowance." Nolte v. Hudson Nav. Co., *supra,* at 167 of 47 F. 2d. The Bankruptcy Judge felt himself bound by "the prior approval rule," which is enunciated in In re Porto Rican American Tobacco Co., 117 F.2d 599 (2d Cir. 1941). However, that requirement is to be omitted "[w]here the creditor has not unnecessarily duplicated the efforts of others, and where his services are such as the trustees cannot reasonably have been expected to perform. . . ." In re New York Investors, Inc., 130 F.2d 90, 92 (2d Cir. 1942); *accord,* Sartorius v. Bardo, 95 F.2d 387, 390 (2d Cir. 1938).

The right of counsel to the Trustee to receive interim compensation, independently, for his conceded services in relation to the recovery has not been determined. Since the aspect of this case in respect to the anti-trust suit is now being concluded, the creditors are entitled now to know what the net benefit will be to the Estate. That requires admeasurement now of any fee due to the Trustee on the anti-trust recovery. In re Casco Fashions, Inc., 346 F.Supp. 1252, 1255 (S.D.N.Y. 1972). *Cf.* In re Paramount-Publix Corp., 10 F.Supp. 504, 510 (S.D.N.Y. 1934).

■ In admeasuring a fee against a fund created for the benefit of a class, it is preferable that all those equitably entitled to be compensated should be considered at the same time to avoid any individual or overall distortions. *Cf.,* e. g., In re National Discount Corp., 211 F.Supp. 261, 262 (W.D.S.C.1962); In re Tapp, 65 F.Supp. 171, 173 (W.D.Ky. 1946); In re Wallace, 14 F.2d 534 (E.D. Okl.1926); In re Falkenberg, 206 F. 835 (D.N.M.1913).

Accordingly, the Bankruptcy Judge should, at the same time, reconsider the relative contributions of the Special Attorney and the Regular Attorney for the Trustee and the attorneys for the objecting creditors and such compensation as is fair and reasonable for the services of each in the creation of the fund in Court and as is reasonable overall and in relation to each other should be allowed payable out of the settlement fund.

The recommendation of the Bankruptcy Judge on the allowances to be paid from and by reason of the creation of the settlement fund is remanded to the Bankruptcy Judge for further proceedings, not inconsistent with this opinion, on such notice to creditors as may be required in the premises.

So ordered.