509 F.2d 1242
 In the Matter of SAPPHIRE STEAMSHIP LINES, INC., Bankrupt-Appellant.
J. Read SMITH, Trustee-Appellant,
v.
WINTHROP, STIMSON, PUTNAM & ROBERTS, Attorneys for E.
Bergendahl Co., Inc.(New York) and E. Bergendahl
Co., Inc. (Philadelphia), Creditors, Appellees.
 No. 158, Docket 74--1533.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 7, 1974.
Decided Jan. 14, 1975.
 
 Louis P. Rosenberg, Brooklyn, N.Y. (Alfred A. Rosenberg, and William Steingesser, Brooklyn, N.Y., on the brief), for trustee-appellant.
 Terence H. Benbow, New York City (Winthrop, Stimson, Putnam & Roberts, New York City, Attorneys pro se, appellees, Victor S. Trygstad, and Steven A. Berger, New York City, on the brief), for appellees.
 Joseph L. Alioto, Sp. Counsel to the Trustee, pro se, San Francisco, Cal. (Robert E. Sher, Washington, D.C., and Robert A. Randick, Jr., San Francisco, Cal., on the brief).
 Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.
 ROBERT P. ANDERSON, Circuit Judge:
 Sapphire Steamship Lines, Inc. (Sapphire), prior to its adjudication as a bankrupt, instituted an action to recover treble damages from several of its competitors for alleged antitrust violations. After bankruptcy intervened, the trustee, J. Read Smith, was substituted as plaintiff and was duly authorized by court order to retain Joseph L. Alioto as special counsel to prosecute the action.
 
 
 1
 Negotiations between the special counsel and counsel for the antitrust defendants resulted in a settlement offer of $1,600,000 in July, 1970. It was the position of the special counsel that, although plaintiff had a strong case on the question of liability, there was insufficient evidence on the issue of damages to warrant further negotiations. Based upon the recommendation of the special counsel that the $1,600,000 was 'fair and reasonable', the bankruptcy court issued an order authorizing the trustee to accept that amount in settlement of the suit.
 
 
 2
 Several creditors of the bankrupt, including the United States and two corporate creditors represented by Winthrop, Stimson, Putnam & Roberts (Winthrop, Stimson), opposed this settlement and jointly moved for a reconsideration of the order, supporting their motion with legal memoranda relating to the issue of damages.
 
 
 3
 The bankruptcy court granted the motion for reconsideration, and '(p)rimarily because . . . (of) evidence produced . . . by the Government' at the hearing, vacated the original order and withdrew its approval of the settlement offer.[1]
 
 
 4
 At various times during the renewed settlement negotiations, counsel for the antitrust defendants requested conferences with the Assistant United States Attorney who was representing the Government's interest as a creditor in the bankruptcy proceeding. Defendants argued that the priority claims of the United States would be substantially met if the particular offer then under discussion were approved and for that reason, they urged the Government to withdraw its opposition. Lawyers from Winthrop, Stimson also attended these conferences and participated in the discussions at the request of the Assistant United States Attorney.
 
 
 5
 When the settlement offer was increased from $1,600,000 to $2,000,000, Mr. Alioto again recommended acceptance but the Government and Winthrop, Stimson were still opposed and the bankruptcy court, therefore, never approved of the new offer.
 
 
 6
 Finally, after continued two-way negotiations--between defendants and special counsel, and between defendants and the Assistant United States Attorney, who requested and received assistance from Winthrop, Stimson--a settlement offer was made in the amount of $2,473,070. The Government recommended acceptance of this offer and the settlement was formally approved by the bankruptcy court, although Winthrop, Stimson opposed this offer also.
 
 
 7
 Thereafter Winthrop, Stimson filed claims for its services with the bankruptcy court in the amount of $175,000, plus disbursements.[2] It claimed that, by reason of its efforts, a better settlement was obtained and the estate was substantially augmented to the benefit of all creditors. None of the creditors opposed this fee application and several affirmatively endorsed it.
 
 
 8
 The bankruptcy court, however, rejected Winthrop, Stimson's application on two grounds: (1) Winthrop, Stimson could not take full credit for the reconsideration and subsequent disallowance of the first settlement; and (2) at no time did it act as counsel to the trustee, but argued solely for its own clients, to whom it was required to look for payment.
 
 
 9
 The United States District Court on petition for review of the decision of the bankruptcy court, remanded the claims with instructions to compensate Winthrop, Stimson for the fair and reasonable value of its services.[3] The district court found that while Winthrop, Stimson may not have been solely responsible for the setting aside of the first settlement order, it had made a contribution toward that result and also to the $800,000 increase in the bankruptcy estate.
 
 
 10
 The trustee and Sapphire appeal from the district court's order granting Winthrop, Stimson counsel fees from the bankruptcy estate. They argue on this appeal that the finding that Winthrop, Stimson's services contributed to the enhancement of the estate in a specified amount is clearly erroneous. Although it is true, as they point out, that the fund was created by the third offer of $2,473,070 which Winthrop, Stimson continued vigorously to oppose, the district court's finding that the activities of the Winthrop, Stimson firm contributed to the reconsideration and disapproval of the first two offers is supported by the record,[4] and, because the rejections of the first two offers were prerequisites for the proposal and eventual acceptance of the final settlement, it is a reasonable inference that Winthrop, Stimson 'contributed to' the creation of the additional $800,000 fund. In spite of this finding, however, the district court was in error in holding that Winthrop, Stimson was entitled to fees from the bankruptcy estate.[5]
 
 
 11
 As a court of equity, the district court, sitting in bankruptcy, has the power to order the payment of fees from the estate to compensate counsel who, in advancing their own client's interest, have benefited all creditors. But equity is grudgingly administered in the award of counsel fees. See, Grace v. Ludwig, 484 F.2d 1262 (2 Cir. 1973). This is especially true in bankruptcy proceedings where responsibility is designed to be centralized in the trustee in an effort to preserve the estate from applications for allowances by numerous importunate claimants. See, In re New York Investors,130 F.2d 90, 91--92 (2 Cir. 1942). As a rule, therefore, the fee of a creditor's attorney is not to be paid from the bankruptcy estate. See, Guerin v. Weil, Gotshal & Manges, 205 F.2d 302 (2 Cir. 1953).
 
 
 12
 Winthrop, Stimson recognize this rule but argue that it is entitled to have its fee paid from the estate under an exception for situations in which (1) the trustee has refused or neglected to act and (2) the applicant has conferred a tangible benefit on all the creditors by acting in the trustee's stead.
 
 
 13
 To qualify for this exception, however, a creditor's attorney must satisfy a third requirement, i.e. the bankruptcy court must have formally authorized such attorney to act instead of the trustee. In re New York Investors, Inc., supra; In Re Porto Rican American Tobacco Co., 117 F.2d 599 (2 Cir. 1941); In re Progress Lektro Shave Corporation, 117 F.2d 602 (2 Cir. 1941).
 
 
 14
 In this case Winthrop, Stimson qualifies under neither the first nor the third requirements of the exception. A trustee 'refuses' or 'neglects' to act when he fails to satisfy a duty imposed upon him by the Bankruptcy Act, which requires that he marshall the assets of the bankrupt and, as with all his substantive duties, exercise reasonable care in so doing. 11 U.S.C. § 75. The trustee in this case did not refuse or neglect to pursue Sapphire's antitrust cause of action, nor did the district court find that he violated his duty of care in that pursuit. Although subsequent events established that the strategic decision to recommend acceptance of the first offer of $1,600,000 was a mistake of judgment, to conclude therefrom, that the trustee 'refused' or 'neglected' to act would encourage creditors and their attorneys constantly to 'second-guess' the trustee's decisions. Such a result would contravene the policy of preserving the estate by centralizing responsibility in the trustee.
 
 
 15
 Winthrop, Stimson concedes that it failed to secure court approval to act on behalf of the trustee, but argues that the third requirement of the exception should not apply where the trustee has not acted in the best interests of the estate. And, it asserts that its own successful opposition, to the special counsel's recommendations which the trustee was willing to accept, demonstrates that the trustee in this case defaulted in the fulfillment of his duty.
 
 
 16
 Although this court has waived prior court approval in 'special circumstances,' and the payment of fees was allowed to objecting counsel who had successfully opposed exorbitant fee applications of the trustee and his counsel, which the trustee obviously would not oppose, In re New York Investors, supra, 130 F.2d at 92, Winthrop, Stimson's services in this case were not brought about by any such 'special circumstances.' To waive the prior approval requirement for all cases in which counsel may successfully oppose the trustee[6] would contravene the policy of the Bankruptcy Act, and is not necessary for the protection of creditors. If Winthrop, Stimson or its clients entertained any doubt as to the trustee's sincerity in the prosecution of the antitrust suit or had lost confidence in the special counsel's competence to represent the estate, their remedy was to apply to the district court for appropriate relief--such as removal of the trustee, or disqualification of the special counsel and substitution of either Winthrop, Stimson or other counsel in the antitrust suit.
 
 
 17
 Although the district court found, in effect, that Winthrop, Stimson satisfied the second requirement in that it conferred a tangible benefit on the estate, the general rule governs this case and, despite the purported equities, Winthrop, Stimson does not qualify for the exception to the rule proscribing the payment of fees to counsel for a creditor in bankruptcy proceedings.
 
 
 18
 The order of the district court is therefore reversed.
 
 
 
 [1]
 The Government introduced evidence at the hearing that several key witnesses were now available who theretofore were reluctant to testify or were otherwise not available. As a result the Bankruptcy Court found 'proving damages was not quite as hopeless as had first appeared.' The Assistant United States Attorney has deposed in the present action and stated that Winthrop, Stimson provided material assistance in locating those witnesses and in uncovering relevant documentary evidence
 
 
 [2]
 This is 20% of $873,070, the amount by which the original offer was increased, and breaks down to an average of $100 per manhour devoted to this matter
 
 
 [3]
 The district court opinion is reported at 373 F.Supp. 727 (S.D.N.Y.1974)
 
 
 [4]
 Although the evidence produced by the Government 'primarily' influenced the Bankruptcy Judge to vacate his original order approving the first offer, Judge Herzog impliedly recognized that Winthrop, Stimson contributed to his decision when he stated in his memorandum opinion that 'the attorney for the creditors cannot take full credit for the disapproval of the first offer.'
 
 
 [5]
 The District Court had remanded the recommendation of the Bankruptcy Judge on the allowances to be paid from and by reason of the creation of the settlement fund for reconsideration and further proceedings not inconsistent with its opinion. Matter of Sapphire Steamship Lines, Inc., supra, 373 F.Supp. at 734. Only that aspect of the decision dealing with Winthrop, Stimson's equitable entitlement to fees has been appealed to this Court. The judgment of this Court does not affect the District Court order as it relates to reconsideration of the fees payable to Joseph L. Alioto. The Bankruptcy Judge, therefore, must now reconsider his recommendation as to the fees payable to Special Counsel and decide specifically whether he is entitled to a percentage of the entire fund or only the $1,600,000 to which he directly contributed his services
 
 
 [6]
 Sartorius v. Bardo, 95 F.2d 387 (2 Cir. 1938), upon which Winthrop, Stimson places great weight, does not warrant a different result. In that case it was held
 '. . . if a creditor successfully opposes a proposal of the trustee, it is no answer to his demand for payment to say that the trustee was in charge; by hypothesis his intervention was necessary. Hence the judge would not have been justified in denying this part of the petition (even though he had not approved petitioner's actions in advance) if any substantial advantage could be traced to the services.' 95 F.2d 390.
 This holding was modified, however, by the subsequent decision of this Court in In re New York Investors, 130 F.2d 90, 92, from which time the rule in this Circuit has been that the prior approval requirement is waived only in cases where compensation is sought for opposing allowances to trustees and their counsel.