**In re Melvin POLLOCK, Melvin L. Pollock, Trustee of 856 Beacon Street Realty Trust Melvin L. Pollock, Trustee of 862 Beacon Street Realty Trust, Debtors.**

**Bankruptcy Nos. 77–2927–G to 77–2929–G.**

United States Bankruptcy Court,
D. Massachusetts.

Aug. 23, 1982.

William T. Boardman, Craig & Macauley, P. C., Boston, Mass., for debtor.

Lewis P. Aronson, Ravech, Aronson & Shuman, P. C., Boston, Mass., for trustee.

## MEMORANDUM AND ORDER ON MOTION FOR BROKER'S FEE

PAUL W. GLENNON, Bankruptcy Judge.

Melvin L. Pollock is seeking compensation from his estate for services he rendered to the estate in connection with the sale of two parcels of real estate owned by him. The chapter XII trustee has objected to his request on the ground that he (the trustee) at no time entered into an agreement to pay Pollock a broker's fee in connection with the sale of any property. After an evidentiary hearing, the court is of the opinion that the motions of Melvin Pollock should be denied.

On December 30, 1977 Melvin Pollock filed three separate petitions for relief under chapter XII of the Bankruptcy Act. 11 U.S.C. §§ 801 et seq., prior to repeal by the Bankruptcy Reform Act of 1978, P.L. 95–598 (1978), and still applicable here by virtue of § 403(a) of the Reform Act. By order of the court, William Macauley was appointed the chapter XII trustee with authority, inter alia, to:

(i) receive and collect all rents, issues, income and profits, and all outstanding accounts, things in action and credits due or to become due to the within estate and revenues of the Debtor's business; (ii) *employ, discharge and fix the salaries and compensations of all managers, administrators, employees, and servants as he deems necessary and advisable for the proper operation of the business and management, preservation and protection of the property of or formerly belonging to Melvin L. Pollock*; (iii) buy and sell services, merchandise, materials and supplies for cash or on credit; (iv) make repairs and improvements in operating facilities; (v) *do all things to conduct the Debtor's business* including the entering into of one or more management contracts to assist in the conduct of the Debtor's business; and (vi) *generally to operate the Debtor's business and manage the Debtor's property until further order of this Court, provided, however, that, without further order of this Court, no property may be sold other than in the regular course of business* and no assets may be hypothecated other than in the regular course of business.

Order of January 12, 1978, (emphasis added).

In connection with his duties, the trustee expressly hired Mr. Pollock to manage and otherwise maintain the properties which were the subject of his chapter XII arrangement. Two of those properties, 14 Keswick Street and 289 Beacon Street, both in Boston, Massachusetts, were subsequently sold, admittedly with the help and through the efforts of Mr. Pollock. He did help find a buyer, negotiated with that buyer to some extent, and presented the buyer to the trustee. On those facts there appears to be little dispute. Additionally, it should be noted that both properties were sold only after application by the trustee, with notice to all creditors, and with express approval of the court.

The dispute centers about whether or not Mr. Macauley actually agreed to pay Mr. Pollock a broker's fee. Pollock says he was told to go and "beat the bushes" to find buyers for several of his real estate holdings. The trustee, while he admits that he may have asked Pollock to seek out interested buyers, says he stated repeatedly that he would not pay any broker's commissions. Pollock, who is a licensed real estate broker in Massachusetts, eventually found a person who ultimately purchased both 289 Beacon Street ($120,000) and 14 Keswick Street ($78,000) from the trustee. On that basis, and because he says the estate benefitted from his actions, he seeks a broker's fee.

Section 64a of the Bankruptcy Act provides for the payment in full of "the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition". 11 U.S.C. § 104(a). Section 62a of the Act provides for court approval before allowance of "the actual and necessary costs and expenses incurred by officers, other than referees...". 11 U.S.C. § 102(a). However, the high cost of modern bankruptcy administration has been a matter of concern to both creditors and courts. *Matter of American Express Warehousing, Inc.*, 525 F.2d 1012, 1013 (2nd Cir. 1975). In order to curb those costs attendant to bankruptcy administration, courts have consistently denied compensation for services, although possibly beneficial to the estate, for which prior authorization was not sought. *In re Porto Rican American Tobacco Co.*, 117 F.2d 599 (2nd Cir. 1941); *Newport v. Sampsell*, 233 F.2d 944 (9th Cir. 1956); *In re Owl Drug Co.*, 16 F.Supp. 139 (D.Nev.1936).

The language in *Owl Drug* is particularly persuasive. There, an attorney's fee application for services rendered to the debtor both prior to and after the filing of the petition was denied where a trustee in bankruptcy had been appointed and no court authority had been granted for such services to be rendered on behalf of the bankrupt. In pointing out the duplication of services which could arise in such situations, the court went on to discuss the policy behind the decisions denying such applications.

> One can readily see the wisdom of these. Were the law otherwise, there would be no limit to the burden which might be placed upon an estate if attorneys for the bankrupt or individual creditors could, by doing work which *it is not* their duty to do, by assisting the trustee, without an order of court allowing their special employment, burden the estate with the added cost of performing work which it is *the duty* of others to perform. The bankruptcy court would lose control in the matter of fees. "Volunteers" would be numberless.... And unpleas-

ant though the task of rejecting claims of attorneys for services *actually* rendered in bankruptcy, when either not authorized or incurred *in violation* of the General Orders of Bankruptcy or of Rules of Court, may have been, at times, courts have performed it repeatedly and unhesitatingly.

*Id.* at 148.

■ Thus, we have the general rule in bankruptcy cases that no compensation can be allowed for "administrative" services unless the person performing the services obtained authority from the court in limine. *In re Postal Telegraph & Cable Corp.*, 119 F.2d 861, 863 (2d Cir. 1941); *Gold v. South Side Trust Co.*, 179 F. 210, 211 (3rd Cir. 1910); *In re Flamingo Hotel Company*, 81 F.2d 749 (7th Cir. 1936); *In re Sapphire Steamship Lines, Inc.*, 509 F.2d 1242 (2d Cir. 1975); *S.E.C. v. First Securities of Chicago*, 528 F.2d 449 (7th Cir. 1976).

■ Thus, the general rule is well established, both in the statute and the case law, that in order to be paid for post-petition services to an estate in bankruptcy, the claiming party must first have received court approval prior to the performance of any service. Here, because Mr. Pollock obtained no such prior authorization from the court, no legal rights attach for the services voluntarily rendered by him. *In re Paramount Publix Corp.*, 85 F.2d 588 (2d Cir. 1936). In *Gold v. South Side Trust Co.*, 179 F. 210, 211 (3rd Cir. 1910), a real estate broker applied for a commission even though he had no contract with the trustee, nor did he have court approval for his services. Further, his help had been solicited by the trustee through a series of flyers circulated throughout the city to licensed real estate brokers. Despite this fact, the court held that "[i]n the absence of such contract or allowance ... [n]o legal liability existed, and, while it may be that under the facts here disclosed the referee might have allowed compensation, such allowance would be an exercise of discretionary power, and not an enforcement of legal rights". *Gold, supra* at 212. The dissent in that case

focused on the solicitation by the trustee of the broker's aid. However, the majority made an obvious reference to the equity powers of the bankruptcy court in pointing out that the referee might have allowed compensation in the exercise of sound discretion. This is so even though the broker has no legal claim to payment.

 In the matter before me, it does not appear that there was an *agreement* for the payment of a broker's fee to Mr. Pollock. The trustee stated unequivocally that none would be paid, and that if Mr. Pollock otherwise felt he was entitled to the same, he should request it of the court. Moreover, even if the trustee had entered into an agreement, Mr. Pollock would have no legal claim to a broker's fee. This is so because the trustee in this case had no authority, absent court approval, to bind the estate to an obligation such as this one. Pollock points to an earlier decision of this court, *A & S Realty Co. v. Melvin Pollock, et al* (May 21, 1979), as authority for his contention that the trustee indeed had such authority. In that case, however, the broker had obtained tenants for a large number of rental units in the debtor's building. There it was said that the making of a brokerage agreement for the rental of units was within the scope of the trustee's authority because it involved the employment of someone in connection with the operation of the debtor's business, which was to rent living space in his buildings. Here, on the other hand, the "broker" would be hired for a function which was beyond the trustee's authority, namely to *sell* real estate. For that, separate court approval was necessary, and so too would have been the employment of a real estate broker.

Finally, even on equitable grounds, Mr. Pollock has not shown that he is entitled to a broker's commission. While his services may have in some way benefitted the estate, they were also indirectly beneficial to Mr. Pollock himself, since they aided his reorganization effort. Moreover, Mr. Pollock cannot claim that the value generated in the sale of his property was the benefit conferred, for that value may have existed apart from his efforts, and might have been realized without them. Indeed, the trustee had identified another potential buyer for the Beacon Street property without Mr. Pollock's help.

On all the facts and applicable law, I am of the opinion that both motions for a broker's fee should be and hereby are DENIED.