**In the Matter of KERO–SUN, INC., Debtor.**

**Bankruptcy No. 2–83–00764.**

United States Bankruptcy Court, D. Connecticut.

Nov. 5, 1984.

Leinwand, Gerton & Leinwand; Robson, Miller & Osserman, Sp. Counsel, New York City, for debtor.

Wender, Murase & White, New York City, for Toyotomi Kogyo Co., Ltd. and Toyotomi American, Inc., creditor.

Zeldes, Needle & Cooper, Bridgeport, Conn., for The Creditors' Committee.

MEMORANDUM AND ORDER RE: DEBTOR'S APPLICATION FOR INTERIM COMPENSATION TO FIRM OF ROBSON, MILLER & OSSERMAN AS SPECIAL COUNSEL NUNC PRO TUNC TO JANUARY 1, 1984

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Three creditors filed an involuntary chapter 7 petition against Kero-Sun, Inc. (debtor) on October 13, 1983, and the court entered an Order for Relief on December 1, 1983. The debtor converted its case to one under chapter 11 on December 6, 1983. The debtor desired to retain the law firm of Robson, Miller & Osserman of New York City (the Robson firm) as its special counsel in two pending actions in the District Court for the District of Connecticut. One action, instituted by Toyotomi Kogyo Co., Ltd. and Toyotomi America, Inc. (Toyotomi), claimed damages from the debtor for breach of contract in excess of $50,000,000.00. The second action, brought by the debtor against Toyotomi, contained antitrust and trademark infringement allegations and sought $100,000,000.00 in damages. The two actions had been consolidated by the district court. On November 29, 1983, the bankruptcy court entered an order on the motion of Toyotomi, and with the consent of the debtor, to modify the automatic stay imposed by 11 U.S.C. § 362(a) to allow Toyotomi to pursue discovery in connection with these actions.

To document the application for the employment of the Robson firm, debtor's former general counsel, Stroock & Stroock & Lavan (Stroock), requested the Robson firm to draft and execute a statement that the Robson firm was disinterested and neither represented nor held an interest adverse to the estate.[1] The Robson firm was directed to forward the affidavit to Stroock for inclusion with the debtor's application. The Robson firm did as directed, but Stroock never submitted the debtor's application for court approval. Relying upon

---

1. 11 U.S.C. § 327 provides in pertinent part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Bankruptcy Rule 2014(a) provides:

(a) *Application for and Order of Employment.* An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the

Stroock to process the application and secure approval thereof, the Robson firm proceeded to represent the debtor in the district court actions. Immediate services of counsel in those actions were required in order to respond to motions for partial summary judgment filed by Toyotomi, engage in discovery, and appear at district court pre-trial hearings.

After the debtor changed general counsel, the new counsel discovered that Stroock had never filed with the court the application for employment of the Robson firm. Therefore, on June 26, 1984, the debtor submitted the instant application for approval of the employment of the Robson firm as special counsel. The application stated that "[u]nfortunately, owing to pressures of other problems in this proceeding, prior bankruptcy counsel was unable to complete the application for approval prior to this time," and requested that the retention of the Robson firm be approved retroactively to January 1, 1984. The debtor represented that the litigation was "significant and complex", requiring a "thoroughly experienced litigator and trial attorney" and requested permission to pay the Robson firm $51,906.17 for services rendered since January 1, 1984.

## II.

The court held a noticed hearing on debtor's application, after which an order was issued approving the employment of the Robson firm. The court reserved, at that time, the issue of whether the Robson firm could be compensated for the period prior to the filing of the application. The creditors' committee, which has been very active in this case, appeared at the hearing and supported the debtor's application. Counsel for the creditors' committee noted that the future of the estate depended, in part, on resolution of the Toyotomi litigation. Toyotomi was the sole objector to the payment of compensation to the Robson firm. Toyotomi, a creditor of the estate with a disputed claim by virtue of its law suit, relies on the "inflexible per se" rule of this circuit which prohibits payments to attorneys whose employment has not previously been approved by the court, no matter how beneficial such services were.[2] The debtor and the Robson firm claim that under the special circumstances present here, the court can authorize compensation.

## III.

The court of appeals decided three of the cases listed in note 2, *supra* during a span of three months over 50 years ago. The fourth case was decided in 1941. Despite a claim by the debtor that the *per se* rule has been modified,[3] I believe these cases represent the present law in this circuit although obviously there have been statutory changes in bankruptcy procedure since their rendering.[4] I conclude, however, that the present proceeding is distinguishable from those holdings, and the debtor's application should be granted. In

person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

2. Toyotomi cites the following cases of the court of appeals:
   *In re Eureka Upholstering, Inc.*, 48 F.2d 95 (2d Cir.1931);
   *In re H.L. Stratton, Inc.*, 51 F.2d 984 (2d Cir. 1931);
   *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988 (2d Cir.1931);
   *In re Progress Lektro Shave Corporation*, 117 F.2d 602 (2d Cir.1941).

The court of appeals in *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280, 1285 (5th Cir. 1983) referred to this rule in the Second Circuit as "an inflexible per se rule—no valid prior court approval of employment upon proper showing, no compensation allowable."

3. The debtor cites *Connelly v. Hancock, Dorr, Ryan & Shove*, 195 F.2d 864 (2d Cir.1952) in support of this claim.

4. "Compliance with the rules ... is of special importance in a district where a court has many judges sitting alternately in bankruptcy, for in such circumstances, no one judge can know what occurred when his predecessor was in charge of that branch of the court." *In re H.L. Stratton, Inc., supra* note 2, at 987.

*In re Rogers-Pyatt Shellac Co., supra* note 2, the court implied that a nunc pro tunc order for compensation could be entered if there were hardship involved not of the attorney's own making.[5] It is clear that upon timely filing of the application, the employment of the Robson firm would have been approved in January, 1984.[6] There is no question of the necessity of the services in and since January, 1984. The Robson firm is blameless, having forwarded their affidavit to general counsel who had the responsibility for filing. Toyotomi obviously was on immediate notice that the Robson firm was appearing for the debtor and made no objection. I find that these are exceptional circumstances which permit me to utilize the equitable powers of the bankruptcy court to approve the debtor's application.

The court in this ruling has carefully considered and not ignored the admonitions of the court of appeals concerning the obligation of the bankruptcy court to require timely filing of employment applications in order (1) to avoid "the emotional pressure which inevitably arises in [the attorney's] favor after the services have been rendered" *In re Rogers-Pyatt Shellac Co., supra* note 2, at 992; (2) to avoid claims "for volunteered services" *In re Eureka Upholstering Co., supra* note 2, at 96; and (3) to discourage "procedure[s] ... in disregard of rules made to safeguard insolvent estates, and ... of the slipshod sort which often has characterized bankruptcy practice" *In re H.L. Stratton, Inc., supra* note 2, at 987.

■ It is not unreasonable, however, for the court, in its carefully exercised discretion, to utilize nunc pro tunc orders in order to prevent harm to innocent parties where no specific violation of the Bankruptcy Code or the Bankruptcy Rules is involved.

*Cf. In the Matter of Triangle Chemicals, Inc., supra* note 2; *In re Certain Special Counsel to Boston & Maine Corp.*, 737 F.2d 115 (1st Cir.1984).

## IV.

At the hearing, all parties agreed that if the court ruled in favor of interim compensation for the Robson firm, the court would enter an order for 75% of the amount requested, leaving for the hearing on final compensation a ruling on compensable hours and appropriate rates. Accordingly, the court approves as an interim allowance for the Robson firm the sum of $38,929.62, being 75% of the requested interim compensation. It is

SO ORDERED.

---

5. "Nor is there merit in the contention that the appointment should now be authorized nunc pro tunc. The only argument in favor of a nunc pro tunc order is that of hardship. But the hardship is of the appellant's own making." *In re Rogers-Pyatt Shellac Co., supra* note 2, at 992.

6. It appears in the four circuit opinions in note 2, supra, that even if there had been timely applications, the requested compensation could have been denied as involving noncompensatory services (*In re Eureka Upholstering Co., supra* note 2); suppression of required information (*In re Rogers-Pyatt Shellac Co., and In re H.L. Stratton, Inc., supra* note 2); and nondisinterestedness of the applicants (*In re Progress Lektro Shave Corporation, supra* note 2.)