**In re Michael R. & Margaret A. PIECUIL, Debtors.**

**Bankruptcy No. 91–12372 K.**

United States Bankruptcy Court, W.D. New York.

Oct. 6, 1992.

Daniel F. Brown, Damon & Morey, Buffalo, N.Y., for debtors.

Guy Van Baalen, Buffalo, N.Y., Office of the U.S. Trustee.

MICHAEL J. KAPLAN, Bankruptcy Judge.

The accountants for the debtor-in-possession have applied under 11 U.S.C. Sec. 327 for retroactive approval of their employment. The application for an order approving their retention was made approximately three months after they commenced work for the debtor-in-possession. They also now seek fees for their work. Notice has been given to all creditors, and only the United States Trustee has opposed. The issues placed before the Court are:

(1) Whether a Bankruptcy Court in the Second Circuit may give retroactive effect to an order approving the employment of a professional under 11 U.S.C. § 327 (stated otherwise, is there a "per se" rule prohibiting "nunc pro tunc" appointments of professionals in the Second Circuit),[1] and, if so, then

(2) Whether the Court should grant retroactive approval with regard to the employment of the accountant involved in the present case.

As to the first question, the Court finds that retroactive approval of employment of professionals is not "per se" forbidden to Bankruptcy Courts in the Second Circuit. As to the second question, the Court lacks sufficient information at this time.

## I. INTRODUCTION

As discussed below, the requirement that there be Court approval of professional services before they are rendered (if they are to be compensated from monies of a bankruptcy estate) derived from the need for a "bright line" distinguishing those services from volunteered services and services that are to be compensated by others, such as individual creditors. While a rigid rule requiring prior approval does prevent abusive claims against the assets of bankruptcy estates, it may also result in a trap for the unwary and for windfalls for the estate at the expense of others. Consequently, this matter has come frequently before the courts. One commentator has counted 79 reported cases discussing the issue of the allowance of compensation even though the requirement of prior court approval of the professional's employment had not been met.[2] As analyzed by that commentator, approximately half of those decisions "embraced the notion that a bankruptcy court had the equitable power to award compensation" in such instances, and the other half were decisions in which the Court refused to award compensation at least partly on the basis that the professional failed to obtain prior Court approval.[3]

The Second Circuit has been viewed by some as having imposed a "per se" rule prohibiting retroactive approval of employment of professionals. The Bankruptcy Court of the Northern District of New York has invoked such a perceived rule.[4] The Bankruptcy Court of the District of Connecticut, though finding authority in the Second Circuit cases to permit retroactive approval in some instances, noted that the Fifth Circuit Court of Appeals in the case of *In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1285 (5th Cir.1983) described the rule in the Second Circuit as "an inflexible per se rule—no valid prior court approval of employment upon proper showing, no

1. The problematic nature of referring to these occurrences as "nunc pro tunc appointments" is explained in Grensky, *The Problem Presented by Professionals who Fail to Obtain Prior Court Approval of their Employment (or, Nunc Pro Tunc Est Bunc),* 62 Am.Bankr.L.J. 185 (1988). It is probably more accurate in most instances to consider the subject at bar to be the use of equitable powers to give retroactive effect to an order, than it is to consider it to be the matter of the granting of "nunc pro tunc" orders.

2. Id. at footnotes 21 and 31.

3. See the analysis Id. at footnote 31.

4. *In re French* 111 B.R. 391 (Bankr.N.D.N.Y. 1989).

compensation allowed." [5] As the Connecticut Bankruptcy Court appears to have concluded, however, reports of the harshness of the Second Circuit's decisions have been exaggerated. Indeed, this might be said not only of the decisions rendered by the Second Circuit Court of Appeals, but also of decisions elsewhere addressing the question at bar. It appears that most courts that have recited a need for strict adherence to the requirement of prior court approval have typically done so only in dictum or in a context in which either (1) they would have denied approval of the employment had application been made prior to the rendering of services, or (2) the applicant consciously avoided the requirement of prior approval. Stated otherwise, there appears to be a distinction between cases in which the professional is an innocent, disinterested third-party provider of services, and other cases.

■ After examining cases of both types I agree that "it is not unreasonable ... for the court, in its carefully exercised discretion, to utilize nunc pro tunc orders in order to prevent harm to innocent parties" where the failure to make timely application has been explained and no violation of underlying policy has occurred.[6]

## II. SECOND CIRCUIT COURT OF APPEALS CASES

### A. The General Rule

Strong language has been used by the Second Circuit Court of Appeals in addressing the role that prior approval plays in addressing the evil of trying to charge the estate for professional services that should be compensated by others (if they should be compensated at all [7], as reflected in the following cases.

The concerns of the Court were evident in *In re Eureka Upholstering Company* 48 F.2d 95 (2d Cir.1931), where the Second Circuit considered the matter of compensation for a trustee's attorney that never applied to the lower court for appointment. The Court observed that former General Order 44 provided that no attorney was to be appointed for a receiver except by order of Court and upon petition of the receiver supported by the proposed attorney's affidavit. The Court stated that the "order and the rule were passed to control serious abuses and are to be strictly observed; without an order of court upon full presentation of the relation of the proposed attorney with all other interests involved, not only may he not be retained, but he can recover nothing, no matter how beneficial, or how arduous his services." *Id.* at 95. Upon examining the facts before the Court it is seen that this case was an involuntary bankruptcy in which the attorney in question had represented the petitioning creditors. The bankruptcy referee and the District Judge had found that counsel's services were only "routine" and allowed only $100 for the filing of the petition; the Second Circuit affirmed. In so doing, the Court observed that apart from the $100, the attorney was seeking compensation for arranging for the sale of assets, safeguarding property, hiring trucks and other matters that the Court stated were not legal services, but were actually duties of the receiver himself. On these facts, then, the Court did not have before it an instance where the attorney's services would have been allowed if an application seeking prior court approval had been made. In fact, the policy of preventing the estate's incurring of expense for unnecessary legal services would have required disapproval of the application had prior approval been sought.

---

5. *In re Kero–Sun, Inc.* 44 B.R. 121, 123 (Bankr. D.Conn.1984).

6. *In re Kero–Sun, Inc.* at 124.

7. 11 U.S.C. § 327 requires Court approval of the employment of professional persons such as accountants to represent or assist the trustee or debtor in possession if they are to be compensated from the bankruptcy estate. Bankruptcy Rule 2014 states that "[a]n order approving the

employment of ... accountants ... shall be made only on application of the trustee ... the application order shall state ... the professional services *to be rendered.*" [Emphasis added.] It is said that the statute and applicable rule anticipate, by their use of future tense, that any professional services required by the state must be approved by the Court prior to their execution; see Grensky, supra note 1 at 188.

Similarly, in the case of *Sartorius v. Bardo*, 95 F.2d 387 (2d Cir.1938), the Circuit affirmed the denial of compensation to the attorney for a committee of bond holders, where there had not been prior approval for those services. The Court stated that "The services of those who choose to help [the trustee] ..., even at his invitation, will be treated as rendered in their several interests alone and not for the estate, unless they present to the Court in advance their pretension to represent it, showing some reason why the trustee's unaided efforts will not serve. If the Court then recognizes them, they become trustees pro hac vice and can be paid; not otherwise." *Id.* at 390. The Court, however, went on to state that "there may perhaps be circumstances giving a creditor warrant for supposing that the Bankruptcy Court had already consented to his acting for the estate. That will be a very rare situation; especially since it is always easy to clarify the matter in limine. Anyone who does not choose to do so assumes an extremely heavy burden in asserting that he had the Court's informal assent. The cumulation of such allowances ... would be a grave abuse, against which we have set ourselves rigidly; we have no disposition to relax." *Id.* at 390. As in *Eureka*, the Court did not have before it an application by a professional who had no prior interest in the case. It considered activities undertaken by the committee and its counsel that were "rendered in their several interests alone and not for the estate." Consequently, this holding says little, if anything, about third-party professionals with no interest to represent other than the estate.

In the case of *In re Progress Lektro Shave Corp.*, 117 F.2d 602 (2d Cir.1941) the Court used similar strong language—"having failed to secure formal appointment under General Order 44 no compensation could be recovered irrespective of benefit to the estate ... to recover compensation from the estate for services rendered to the

trustee an attorney must receive appointment under General Order 44." *Id.* at 604. In that case, however, the Court stated that the attorney at bar would not have been eligible for appointment under General Order 44 (if prior application had been made) because he was not "disinterested," but rather was the attorney for the debtor. As in the two cases already discussed, the applicant would have been barred even if timely application had been made.

*In re Rogers–Pyatt Shellac Company*, 51 F.2d 988 (2d Cir.1931) is also often cited for its strong language. Concerning General Order 44 and a similar local rule the Court stated, "we can construe this only as expressly prohibiting any allowance, even if an attorney is appointed, unless 'before his appointment' he makes and files the affidavit required by the rule." *Id.* at 991. The Court, however, observed unequivocally that the attorneys in question "would not have been appointed had the affidavit made the disclosure" which local rules required. Specifically, a showing of cause was required before the attorney for petitioning creditors in an involuntary case could be retained by the Trustee. The applicants at the bar indeed had represented the petitioning creditors, but had neglected to recite good cause for their selection. Thus, again, no disinterested third-party professional was before the Circuit Court.[8]

### B. Recent Cases—A Narrow Exception is Stated

The Second Circuit cases of more recent vintage seem to directly acknowledge that either there is not a rigid rule of prior approval, or that some limited exceptions exist. One such exception involves those professionals who successfully oppose the fees sought by trustees and their counsel. Thus, the Circuit, in the case of *In re Sapphire Steamship Lines, Inc.* 509 F.2d 1242 (2d Cir.1975), stated that its holding in *Sartorius* (discussed above) was modified by its subsequent decision in the case of *In re New York Investors*, 130 F.2d 90 (2d

---

**8.** Consider also the Second Circuit decision of *In re H.L.Stratton, Inc.*, 51 F.2d 984 (2d Cir. 1931), where the Court also emphasized the need for rigorous compliance with General Order 44 and local rules in this regard but where, again, strict compliance would have resulted in the disqualification of attorneys ab initio, had proper application been made.

Cir.1942), such that it may be said that "the prior approval requirement is waived only in cases where compensation is sought for opposing allowances to Trustees and their counsel." *Id.* at N. 6, 1246. On that basis the *Sapphire* Court denied compensation to creditors' attorneys whose opposition to certain trustee-proposed settlements resulted in higher settlements. The Court stated that a Bankruptcy Court, as a Court of equity, "has the power to order the payment of fees from the estate to compensate counsel who, in advancing their own client's interest, have benefitted all creditors, but equity is grudgingly administered in the award of counsel fees." *Sapphire,* at 1245.

In 1981, the Circuit, in deciding *In re Futuronics Corp.,* 655 F.2d 463 (2d Cir. 1981) stated "it has long been the practice in this Circuit to deny compensation to counsel who failed to comply" with the disclosure provisions contained in former Bankruptcy Rule 215, which superseded General Order 44, and preceded current Bankruptcy Rule 2014(a). *Id.* at 469. The Court noted that in *Eureka,* it held that a technical noncompliance with those disclosure requirements warranted a total denial of compensation. The Court went on to state that a rigorous interpretation of that rule was "somewhat relaxed" in its decision in *Connelly v. Hancock–Dorr, Ryan & Shove,* 195 F.2d 864 (2d Cir.1952), where it found that the relevant facts were "generally disclosed to the Judge" and the record indicated that "the facts were known by the Judge at the time of appointment." *Futuronics* at 469. As in other Second Circuit decisions, however, the application at bar in *Futuronics* sought fees for a law firm that failed to disclose all connections it had with the attorneys for the debtor. The Court stated "indeed, the ... firm exhibited a total and callous disregard for the disclosure requirements of Rule 215...."

*Id.* at 469. Therefore, it is clear that the Second Circuit had before it an applicant who was not a suitable candidate for equity.[9]

Common, then, to all key decisions of the Second Circuit are the facts that they involved applications by attorneys (as opposed to accountants, auctioneers, appraisers, or other professionals) who represented or were affiliated with other interests in the case apart from representation of the estate. In no instance that can be found has the Circuit adopted a rigid view of the prior approval requirement in connection with any professional whose only involvement in the case, as attorney or otherwise, was to perform services for the estate which the professional thought would be compensable from the estate and as to which the professional could look to no-one but the estate (for compensation). Even with regard to applications by attorneys representing creditors or others, the Circuit was seen to recognize certain very narrow exceptions from what was otherwise rigid language of statute and rule.

### C. Cases in This District

In the District Court and Bankruptcy Court of this District, proper obedience has been paid to the guidance offered by the Second Circuit. Thus in the case of *In re Amherst Mr. Anthony's Limited,* 63 B.R. 292 (W.D.N.Y.1986), the District Court observed that "it has been the long-standing practice of this Circuit" to deny compensation to attorneys who fail to obtain Court appointment prior to acting on behalf of a debtor-in-possession, and that deviation from such practice would be appropriate only where there existed unavoidable hardship or excusable neglect in failing to obtain timely appointment. *Id.* at 293. It found that the attorney for the debtor-in-possession, who had not sought approval of employment as such until two years after

---

**9.** Similarly, in the case of *In re American Express Warehousing Ltd.,* 525 F.2d 1012 (2nd Cir. 1975), the Second Circuit, addressing the matter of attorney compensation, cited the need for prior Court authorization as one of the "strict requirements" before which a creditor's attorney can be awarded fees from the estate of a bankrupt. The Court there reaffirmed what it

called "the well-established *New York Investors* Exception" for instances in which compensation sought for successfully opposing allowances to the Trustee or counsel. Thus the Court denied recovery to a creditor's attorney for its successful opposition to certain applications of a creditors committee.

the filing of the Chapter 11 petition, had failed to demonstrate hardship or excusable neglect, and that, moreover, he had accepted fees during the pre-appointment period without notice to the Court. The Court affirmed the Bankruptcy Court's denial of nunc pro tunc appointment.

Similarly, and in light of the above case, this Court in *In re Hazen Agr. Products Service, Inc.* 109 B.R. 602 (Bankr.W.D.N.Y. 1990) denied nunc pro tunc appointment to an attorney for a debtor-in-possession who provided no explanation for his failure to seek prior approval of his employment.[10]

Earlier, in the case of *In re Hucknall Agency, Inc.*, 1 B.R. 125 (Bankr.W.D.N.Y. 1979) this Court denied compensation to an accountant for a debtor-in-possession because prior approval of the accountant's employment had not been obtained. In that Chapter XI case the debtor claimed that it had paid money to the accountant to hold in escrow rather than for the performance of accounting services. Hence, it can be seen that this was a case that did not involve a late application; rather the debtor denied that it had *ever* employed the accountant to perform accounting services.

And more recently this Court, in the case of *In re Keegan Utility Contractors, Inc.*, 73 B.R. 82 (Bankr.W.D.N.Y.1987), addressed a situation in which "two veteran attorneys ignored a most fundamental requirement of bankruptcy practice which they knew or should have known. This omission is loosely attributed to 'administrative oversight' but it appears more likely to be the result of administrative overreaching." *Id.* at 83. Recognizing that "an extremely dim view is taken in this Circuit of efforts to obtain nunc pro tunc Orders employing professionals when Court authorization in the first instance has not been sought," the Court held that the applicant failed to make "the type of compelling demonstration" that would incline the Court to order a nunc pro tunc appointment. *Id.*

### D. Other Cases

Meanwhile, in the lower courts of the Second Circuit and elsewhere, the prior approval requirement has been applied to attorneys and non-attorneys in instances where there was another reason for the court to deny compensation. For example, in the case of *In re Providence Television*, 113 B.R. 446 (Bankr.N.D.Ill.1990), the prior-approval requirement with regard to 11 U.S.C. § 327 was held to foreclose administrative expense payments for a media broker who claimed to have provided brokerage services to the debtor-in-possession, where, of crucial importance, the debtor-in-possession opposed the broker's application arguing that the brokerage had no basis to claim that it was working for the debtor-in-possession. Thus it can be seen because the section 327 application to employ must be made by the representative of the estate (whether the Trustee or the debtor-in-possession) the Providence Television case did not involve the matter of an untimely application. The debtor denied that it *ever made application* and further stated that it *never* wished to retain the services of the claimant. Hence, this case (like the *Hucknall* case discussed earlier) did not involve a "late" application to employ; it involved no application at all.

Another variation appears in the case of *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr.S.D.N.Y.1986). There the Court confronted a fee application by a firm which had received prior approval for only a specified scope of retention, and had exceeded the scope of that retention. Citing the "harsh rule" that services not previously authorized are not compensable regardless of the benefit conferred, the Court would not allow compensation for the work done in excess of the work approved. Thus, before the Court there was perceived a conscious disregard for the prior approval requirement.

All of the pertinent authorities for a rigid and harsh conclusion were set forth by the Court in the case of *In re Yeisley*, 64 B.R.

---

**10.** It should also be noted that counsel had failed (as of the time of the application for nunc pro tunc employment) to comply with the Court's demand for an accounting of fees collected by him.

360 (Bankr.S.D.Tex.1986). That case concerned an auctioneer who, instead of conducting an auction, conducted a private sale that the trustee could have conducted without assistance. Again, therefore, before the court were services that would not have been approved had prior application been made.

A District Court, considering an appeal in the case of *Grabill Corp. v. Pelliccioni*, 135 B.R. 835 (N.D.Ill.1991), similarly cited the pertinent authorities for a strict application of the prior approval rule in affirming a Bankruptcy Court denial of compensation to attorneys who utterly ignored the fact that the Bankruptcy Judge had denied their application for employment for cause. The attorneys spent over 523 hours working on the case despite the entry of an Order denying their employment. The District Court agreed with the Bankruptcy Court, that equitable principles ought not to be extended to grant them the $69,000 in fees and $9,800 in expenses which they sought. (It seems beyond doubt that the prior approval requirement should be strictly applied to one who made application but was denied approval.)

### III. CONCLUSION

In light of the above described cases, it can still be said today, as it was in 1983, that "It is fair to note ... that in most of these decisions some additional reason for disallowing payment of fees is shown absent the mere failure to secure a prior order, a reason that would have precluded proper issuance of the order authorizing the employment." [11] In some cases where

employment might have been granted upon prior application, it seems fair to say that compensation might be denied after the services were rendered because they were unnecessary or the fees were unreasonable.[12]

█ This is not to say that the "harsh" rule has never been applied in instances in which the decision fails to disclose any reason for denial apart from the lack of prior approval.[13] It is to say that the applicable case law permits this Court, as a court of equity, latitude to grant relief where the failure to file a timely application has been explained, and the explanation has been found reasonable.[14] Cases which might otherwise appear to be to the contrary are distinguishable on the facts.[15]

█ It is argued in the case at bar that the applicant is an accounting firm; that the firm was dependent upon the debtor's counsel to prepare, file and serve its application for appointment; and that the delay of debtor's counsel in doing so should not form the basis for denying nunc pro tunc appointment to the accountant. The application for employment was filed on or about June 19, 1992, sought retroactivity to the date on which he began rendering services to the debtors, March 20, 1992, and was approved only prospectively, with leave to renew the request for retroactive relief on notice to all creditors; hence, it is also argued that failure to approve retroactive employment would be unduly harsh and clearly unwarranted, given the small total delay. In opposition to that view it is argued that the accounting firm has served as accountant in several other cases in this

---

**11.** *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983).

**12.** Consider, for example, the above described case of the auctioneer who conducted a private sale instead of an auction.

**13.** Consider, for example, *In re French* 111 B.R. 391 (Bankr.N.D.N.Y.1989). Moreover, while this Court has examined the Second Circuit cases, it has not examined every one of the 79 decisions said to be on point (see footnote 2 above).

**14.** The *Grensky* article argues against tests such as those proposed in the case of *In re Twinton Properties Partnership*, 44 B.R. 426 (Bankr.

M.D.Tenn.1984), and in favor of the simple formulation adopted in the case of *In re Coast Trading, Inc.*, 62 B.R. 664 (Bankr.D.Or.1986), in such instances. I agree with Grensky and with the *Coast Trading* court that the test should be simply this—Has the professional satisfactorily explained to the Court his or her failure to obtain prior court approval?

**15.** A reasonable explanation for delay in seeking approval is not the only basis for exception to the prior approval requirement; see the discussion above of the Second Circuit's decision in *Sapphire.*

784

district as an examiner in two other cases; that its principal is no stranger to the processes of the Court, and should have prepared and filed an application (through his own counsel) "or at the very least, persisted in getting [the debtor's attorney] to timely file his application."

Although the above analysis of cases suggests that non-attorneys not otherwise connected with the case might be a special group, the Court will not condone wilful or cavalier disregard of the requirement of prior approval even by that special group. The Court cannot determine from the record before it what the accountant knew or should have known regarding the prior approval requirement in general and also with regard to this case.[16]

The Weld firm shall have 10 days in which to provide its affidavit explaining the delay from its perspective.

SO ORDERED.

---

16. Contrast, for example, *Carlton House Partners, Ltd.,* 93 B.R. 875 (Bankr.E.D.Pa.1988) with *In re Freehold Music Center* 49 B.R. 293 (Bankr. D.N.J.1985). In the former, a sophisticated accounting firm with its own knowledgeable counsel was denied five-month's retroactivity. In the latter, a small accounting firm with no prior bankruptcy experience and a good faith belief that authorization had been obtained was granted retroactivity.