**In re Richard & Constance WAKE, Debtors.**

**Bankruptcy No. 97–21365.**

United States Bankruptcy Court, W.D. New York.

June 23, 1998.

**36**

Warren H. Heilbronner, Rochester, NY, Chapter 7 Trustee.

Lacy, Katzen, Ryen & Mittleman, L.L.P., Rochester, NY, for Debtor.

### DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On April 15, 1997, Richard W. Wake ("Richard Wake") and Constance A. Wake

("Constance Wake") (collectively the "Debtors") filed a petition initiating a Chapter 7 case. The Debtors schedules, required to be filed by Section 521 and Rule 1007, indicated that: (1) The Debtors, who formerly did business as Venture Investment Properties, jointly owned a personal residence and twenty-three residential income properties, and the Debtor, Richard Wake, individually owned two other residential income properties [1]; (2) the Debtors had unsecured claims against them for in excess of $1,126,000.00, a substantial number of which were scheduled as disputed and contingent claims related to their income properties [2]; (3) the Debtors had valued their personal property at $150,150.00 and had claimed exemptions in property valued at $107,000.00, including in excess of $94,000.00 in pension funds; and (4) although living apart, the Debtors reported on their Schedule I: (a) a current combined gross monthly income from Eastman Kodak Company where they were both employed of $6,937.00 ($83,244.00 annualized); [3] (b) a current combined net take-home pay of $5,675.00; and (c) total monthly expenses of $3,858.00 [4], exclusive of $1,032.00 in support apparently being paid by Richard Wake to Constance Wake.

On April 21, 1997, the Court forwarded to all creditors, including Marchese, a Notice of Commencement of Case under Chapter 7 (the "Notice to Creditors"). The Notice advised creditors that: (1) the Debtors, who were formerly partners in Venture Investment Properties, had filed a Chapter 7 petition for liquidation on April 15, 1997; (2) Warren H. Heilbronner (the "Trustee") had been appointed as Trustee; and (3) a meeting of creditors was scheduled to take place on May 16, 1997.

On May 16, 1997, the Trustee conducted an initial Section 341 meeting of creditors. His

---

1. These properties were located in Rochester, Hilton and Niagara Falls, New York.

2. One of the unsecured creditors scheduled by the Debtors was Francis Marchese, CPA ("Marchese"). He was listed as holding a fixed and liquidated claim of $2,400 for November, 1996 accounting services.

3. Their reported combined earnings for 1996 was $88,163.

4. This results in a combined excess monthly income of $1,817.00 ($21,804.00 annualized).

Minute Report of the hearing filed with the Court indicated that there were possible assets in the estate consisting of potential equity in automobiles and real estate holdings. The Minute Report of an adjourned Section 341 hearing conducted by the Trustee on May 28, 1997 indicated again that there were possible assets in the estate consisting of equity in real estate holdings. These Minute Reports did not indicate that there were any discussions at the hearings regarding potential income tax refunds.

On August 1, 1997 the Trustee filed a motion [5] for authority to retain the "Property Manager" who had been employed by the Debtors prepetition so that she could continue to manage fifteen of the income properties located in Rochester, New York while the Trustee determined whether they should be sold or abandoned. On September 17, 1997, with the consent of the Office of the United States Trustee, an Order was entered approving the retention of the Property Manager.

On August 11, 1997 the Trustee caused an additional notice (the "Asset Notice") to be forwarded by the Court to all creditors, including Marchese, which indicated that the Debtors Chapter 7 case had become an asset case.

On September 3, 1997, the Debtors, by their attorneys, filed a motion (the "Motion to Compel "), which requested that the Court compel the Trustee to manage and operate the income properties of the estate located in the City of Rochester in accordance with all applicable state and local laws, as required by 28 U.S.C. § 959(b). The Motion alleged that, notwithstanding the rentals that the Trustee had collected from these income properties, there were uncured postpetition and/or prepetition violations of housing, building zoning and other regulatory violations which had resulted in postpetition fines and penalties being assessed against the Debtors individually. On November 5, 1997, after a number of adjourned hearings and exchanges among the Trustee, the attorney for the Debtors and the City of Rochester, the Motion to Compel was withdrawn.

On March 16, 1998, the Debtors, by their attorneys, filed a motion (the "Administrative Expense Motion") that requested the Court enter an order authorizing the Trustee to pay Marchese the amount of $2,995.00 as an administrative expense. The Motion alleged that: (1) At the time they filed their petition on April 15, 1997, the Debtors had not prepared or filed their 1996 federal and state income tax returns; (2) after they filed their petition, the Debtors retained Marchese to prepare a 1996 partnership return for Venture Investment Properties and their 1996 individual tax returns; (3) Marchese prepared the requested returns that resulted in refunds of $7,575.00 which were paid over to the Trustee as property of the estate; (4) Marchese billed the Debtors $2,995.00 for his CPA services; and (5) the Debtors believed the CPA services substantially benefitted the estate and entitled Marchese to an allowance of an administrative expense of $2,995.00 pursuant to Section 503(b)(1)(A) [6].

Attached to the Administrative Expense Motion was an affidavit by Marchese (the "Marchese Affidavit"). The Affidavit included as an exhibit a copy of the time records for the CPA services rendered by his firm to Venture Investment Properties and the Debtors (the "Billing Records").[7] Although

---

**5.** This motion was brought pursuant to Section 327(a) which provides for a trustee's employment of professional persons, as follows:

    (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

**6.** Section 503(b)(1)(A) provides:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

**7.** The Billing Records showed that the initial postpetition CPA services were performed on July 21, 1997. This was three months after the Notice to Creditors was mailed to Marchese and

the Affidavit indicated that copies of the tax returns which were prepared were attached, they were not attached to the Motion or the Affidavit filed with the Court. The Marchese Affidavit asserted that the amount billed to the Debtors for his CPA services was fair and reasonable.

The Trustee interposed opposition to the Administrative Expense Motion which asserted that: (1) Individual Chapter 7 debtors, not their trustee or the bankruptcy estate, are obligated under the federal and state income tax statutes and regulations and, in an asset case, the Local Rules of The Bankruptcy Court for the Western District of New York, to file their individual tax returns, especially for any prepetition tax years, notwithstanding that any refund due is Section 541 property of the estate that must be turned over to the trustee; (2) the Debtors received a substantial personal benefit from having their individual 1996 federal and state income tax returns prepared and filed, which allowed them to comply with the requirements of the applicable tax laws and the Local Rules of the Bankruptcy Court, and no attempt was made by Marchese to quantify and apportion that personal benefit versus any benefit to the bankruptcy estate; (3) Marchese never contacted the Trustee to advise him of his intent to perform CPA services that might benefit the bankruptcy estate or to discuss possible compensation for those services prior to his performance of the services; (4) no application was made to the Court to have Marchese retained as a professional person, as required by Section 327(a); and (5) the Billing Records included time entries for services that were performed prepetition, which could never be compensated as an administrative expense, and services which appeared to be for the sole personal benefit of the Debtors.

### SUMMARY OF DECISION

The Administrative Expense Motion is denied because:

1. Marchese did not obtain an Order of the Bankruptcy Court pursuant to Section 327(a) approving his employment as a professional person to provide services to the bankruptcy estate, which could and should have been done if he expected to be compensated for any professional services which may have benefitted the estate;

2. The Bankruptcy Court could not exercise its discretion to approve the employment of Marchese *nunc pro tunc* because: (a) Marchese was a prepetition creditor of the estate and, therefore, was not a disinterested person who could have been employed as a professional person pursuant to Section 327(a); (b) as a CPA, Marchese should have known that only the personal representative of the Chapter 7 estate, the Trustee, could engage his services at the expense of the estate, and then only with proper court approval; and (c) neither the Trustee nor the Bankruptcy Court was even aware that Marchese was performing professional services which might benefit the estate;

3. Based upon the facts and circumstances presented, including giving consideration to the substantial personal benefit which the Debtors obtained from having their individual 1996 federal and state income tax returns prepared and filed, the Court cannot reasonably conclude that either Marchese or the Debtors expected Marchese to be compensated for his CPA services from other than the Debtors individually, who can afford to pay Marchese for the services rendered from their postpetition income which is not property of the estate; and

4. The Debtors and Marchese have failed to meet their burden to demonstrate why, other than because the estate received the resulting tax refunds, all of the CPA services performed by Marchese benefitted the bankruptcy estate and were of no quantifiable benefit to the Debtors individually.

### DISCUSSION

#### A. *Professionals must be Appointed under Section 327(a)*

A trustee appointed in a Chapter 7 liquidation case has the duties set forth in

---

more than seven weeks after the May 28, 1997 adjourned Section 341 meeting was held. The Billing Records also showed that more than one-half of the hours of work performed by March-

ese's firm were performed after the Assct Notice sent on August 11, 1997 would have been received.

Section 704, which include the duties to collect, reduce to money and be accountable for all of the property of the bankruptcy estate. An individual Chapter 7 debtor, on the other hand, has the duties set forth in Section 521, which include cooperating with the trustee, as necessary, to enable the trustee to perform the duties set forth in Section 704. These Section 521 duties do not include a duty or a right to administer the assets of the estate beyond cooperating with the directions of the Trustee, and clearly they do not give a Chapter 7 debtor the right to incur expenses in connection with the administration of the estate without the approval of the trustee. It is only the trustee who is the representative of the estate charged with its administration and a duty to be accountable for the use of its assets. To properly perform the duties necessary for an orderly and efficient administration, a trustee is expected at all times to exercise sound business judgment, especially when incurring expenses to be paid from the assets of the estate.

■ Recognizing that a trustee might require the services of professionals in order to carry out his or her duties, Section 327(a) allows a trustee, with the approval of the Bankruptcy Court, to employ various professionals, including an accountant, if those professionals are disinterested and have no interest adverse to the estate.[8] Following the "Per Se" Rule employed by a majority of the Courts, this Court in *In re Dansville Properties, Inc.*, 177 B.R. 174 (Bankr.W.D.N.Y.1995) ("*Dansville Properties* "), held that professionals who held a prepetition debt against the bankruptcy estate where not disinterested and, therefore, could not be employed pursuant to Section 327(a). Because of the holding in *Dansville Properties*, Marchese could not have been employed by the Trustee under Section 327(a) unless he waived his prepetition claim against the estate. March-

ese did not waive his prepetition claim and was never even employed by the Trustee, the representative of the estate, pursuant to Section 327(a). To allow Marchese, a professional, to be paid for his CPA services as an administrative expense pursuant to Section 503(b)(1)(A), rather than pursuant to Section 503(b)(2), when he was not and could not have been employed by the Trustee under Section 327(a), would allow that professional person to be rewarded and compensated for failing to comply with the specific requirements of this Court.

### B. The Expectations of Marchese and the Debtors

Based upon all of the facts, circumstances and equities presented, I conclude that neither Marchese nor the Debtors had a reasonable expectation that the CPA services which Marchese performed at the request of the Debtors, which personally benefitted the Debtors, would be paid for in whole or in part by the Debtor's Chapter 7 estate.

As a CPA, Marchese could not reasonably have had an expectation that any payment for his postpetition CPA services would be made by the Chapter 7 estate. As a CPA, not just a tax preparer or an accountant, with knowledge that: (1) the Debtors had filed a Chapter 7 case before any substantial services were performed in preparing their 1996 individual income tax returns; (2) a Chapter 7 Trustee had been appointed; and (3) he was an unpaid prepetition creditor of the estate, Marchese could not have been expected to be paid for any services rendered which might benefit the estate without, at a minimum, the specific prior agreement of the Chapter 7 Trustee.[9] I must conclude that Marchese was expecting payment for his services directly from the Debtors who had retained him.[10]

---

**8.** Thereafter the professional is awarded reasonable compensation by the Court under Section 330(a) which is allowable as an administrative expense pursuant to Section 503(b)(2).

**9.** Although Bankruptcy Courts in exceptional circumstances approve the employment of a professional person who has rendered valuable services to a Chapter 7 estate *nunc pro tunc*, they do not do so when: (a) that professional would not have been eligible for employment under Section

327(a) because the professional was not disinterested; and (b) the professional was not retained by the Trustee and neither the Chapter 7 Trustee nor the Court was even aware that such services were being performed. See *In re Piecuil*, 145 B.R. 777 (Bankr.W.D.N.Y.1992).

**10.** Marchese knew from the Debtor's W–2 earnings, which were made available to him in connection with his services, that the Debtors had

The Debtors also could not reasonably have had an expectation when they retained Marchese postpetition to prepare and file the tax returns in question that payment for his services would be made in whole or in part from their Chapter 7 bankruptcy estate. They never discussed payment for these services with the Trustee at either of the two Section 341 meetings they attended or otherwise before the services were performed. In addition, the Debtors attorneys are a firm with many members and associates who are knowledgeable and experienced in bankruptcy matters. These attorneys would never have advised the Debtors that Marchese's CPA services would be paid in whole or in part from the estate if his retention was not discussed with the Trustee in advance and an order obtained authorizing his employment, since it was the employment of that very firm which was the subject of the Court's decision in *Dansville Properties.* I must conclude that when the Debtors retained Marchese to prepare and file their tax returns they realized that they were getting a direct and substantial personal benefit from those services, and that they had sufficient postpetition net income from their earnings, which was not property of the estate, to pay for the services.

## C. *Overview*

 It is critical to the efficient and effective administration of a Chapter 7 case that the Chapter 7 trustee be the focal point of all aspects of the administration, since it is the trustee who is required to exercise sound business judgment in connection with that administration. If expenses are to be incurred in the administration of the estate, they should be incurred or authorized by the trustee. The Court is aware that there may be emergencies in a Chapter 7 case where debtors or their attorneys might have to incur reasonable expenses to preserve valuable assets of the estate because there is not time to consult with the trustee, the Office of the U.S. Trustee or the Court. No one, including this Court, the panel of standing trustees or the Office of the U.S. Trustee would discourage debtors or their attorneys from incurring such necessary emergency ex-

sufficient postpetition income to pay for his

penses. However, in the absence of an emergency, when the trustee or the Office of the U.S. Trustee can be consulted before an expense of administration is incurred, that must happen.

## CONCLUSION

The request on behalf of Marchese for the allowance of an administrative expense is in all respects denied.

**IT IS SO ORDERED.**