## In re PLATINUM MANAGEMENT CORPORATION, Debtor.

**UNITED STATES TRUSTEE FOR THE WESTERN DISTRICT OF NEW YORK, Appellant,**

v.

**GROSS, SHUMAN, BRIZDLE & GILFILLAN, P.C.,[1] Appellee.**

No. 98–CV–0131E F.

Bankruptcy No. 95–13661K.

United States District Court, W.D. New York.

Oct. 28, 1998.

---

1. Because this appeal—originally captioned "United States Trustee for the Western District of New York, Appellant -vs- Robert Feldman, Esq., Appellee"—involves Feldman's law firm rather than Feldman individually, the caption has been amended by separate order to designate the firm as Appellee.

the General Counsel, Washington, DC, for appellant.

Robert J. Feldman, c/o Gross, Shuman, Brizdle & Gilfillan, Buffalo, NY, for appellee.

### MEMORANDUM and ORDER

ELFVIN, Senior District Judge.

The matter currently before this Court is an appeal from the Bankruptcy Court order retroactively approving the appointment of the Appellee law firm. In that same order, the Bankruptcy Court awarded attorneys' fees to the law firm. For the reasons delineated below, the Bankruptcy Court's order is reversed in part, vacated in part and remanded.

This appeal was properly brought pursuant to 28 U.S.C. § 158(a). Although the Court of Appeals for the Second Circuit has not dealt with the standard-of-review question in this particular context, other circuits have found that determinations regarding *nunc pro tunc* applications for the employment of a professional—decisions by their nature discretionary—are reviewed for abuse of discretion. See *In re Jarvis*, 53 F.3d 416, 420 (1st Cir.1995); *In re Land*, 943 F.2d 1265, 1268 (10th Cir.1991). Acknowledging the soundness of the reasoning employed in *Jarvis* and *Land*, I review Judge Kaplan's decision on such basis.

As a preliminary matter, Judge Kaplan's award of attorneys' fees will be reversed as premature because no fee application has been filed by Appellee.

The central issue on appeal is whether Appellee has provided a sufficient explanation for its failure to obtain the Bankruptcy Court's prior approval of its employment application filed pursuant to 11 U.S.C. § 327. It is worth noting at this point that the case law and the Bankruptcy Code itself are unclear as to exactly who has the burden of providing a sufficient explanation for the failure of a firm to obtain the Bankruptcy Court's approval of its retention. See, *e.g.*, *In re Coast Trading Co., Inc.*, 62 B.R. 664 (Bankr.D.Or.1986) (professional bears the burden of providing sufficient explanation for

Jeanne M. Crouse, U.S. Dept. of Justice, Executive Office for U.S. Trustees Office of

failure to obtain approval of employment); but see *In re 245 Associates, LLC*, 188 B.R. 743 (Bankr.S.D.N.Y.1995) (court-appointed receiver and debtor's counsel had the burden of providing sufficient explanation). In this case, because Judge Kaplan looked to Appellee for a reasonable explanation and because Appellee filed the affidavits in support of the debtor-in-possession's application, this Court regards the burden as resting with the Appellee.

■ Section 327 of the Bankruptcy Code requires that professionals be employed in bankruptcy proceedings only with the permission of the court. Accordingly, "it has been the long-standing practice of this circuit to deny compensation to attorneys who fail to comply with that rule." *In re Amherst Mister Anthony's Ltd.*, 63 B.R. 292, 293 (W.D.N.Y.1986) (citing *In re Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981)).

■ At the same time, bankruptcy courts may administer equity in the authorization of counsel. *In re Sapphire Steamship Lines, Inc.*, 509 F.2d 1242, 1245 (2d Cir.1975); see generally *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). And, as Judge Kaplan himself has observed, "the applicable case law permits [a bankruptcy court], as a court of equity, to grant relief where the failure to file a timely application has been explained, and the explanation has been found reasonable." *In re Piecuil*, 145 B.R. 777, 783 (Bankr.W.D.N.Y. 1992).

In order to determine whether Appellee's explanation is sufficiently "reasonable," it is necessary to review the relevant facts and the standard by which the proffered explanation should be measured. This case was commenced October 20, 1995 when the debtor-in-possession, Platinum Management Corporation ("Platinum"), filed for relief under the reorganization provisions of Chapter 11 of the Bankruptcy Code and identified Appellee as its counsel.[2] Three days later, the United States Trustee furnished Platinum's president and Appellee's Robert J. Feldman,

Esq. with the United States Trustee Operating Guidelines which spell out, *inter alia*, the section 327 court-approval requirement. On November 1, 1995 Feldman attended the Initial Debtor Conference ("the I.D.C.") at which the subjects of section 327 and *nunc pro tunc* employment were discussed. One month after the I.D.C., Feldman attended a section 341 creditors' meeting at which he was reminded to obtain approval of his firm's retention.

On October 7, 1997—nearly two years after said creditors' meeting—Platinum filed a section 327 application for employment of Appellee in which it asserted that its failure to request approval of employment previously was "due to oversight and misunderstanding." Motion for Authority to Retain Counsel at 2. Pursuant to 28 U.S.C. § 586, the United States Trustee (through Assistant United States Trustee Christopher Reed) objected to the application for employment on the ground that Appellee had not met its burden of establishing "excusable neglect." Objection of the United States Trustee at 1.

Whether and when to depart from section 327's seemingly inflexible language has been a source of considerable litigation, from which a spectrum of approaches has evolved. *Cf., e.g., In re Eureka Upholstering Company*, 48 F.2d 95 (2d Cir.1931) (without court approval, the attorney may recover nothing "no matter how beneficial, or how arduous his services"), *Jarvis* at 421 (*nunc pro tunc* orders should be granted only upon a showing of extraordinary circumstances), *In re Singson*, 41 F.3d 316, 319 (7th Cir.1994) (excusable neglect is the standard against which *nunc pro tunc* orders should be evaluated), and *In re Glinz*, 36 B.R. 17 (Bankr.D.N.D. 1983) (*nunc pro tunc* orders may be granted even if failure to comply with section 327 is a function of "mere unintended oversight").

The prospect of a uniform approach to retroactive employment applications was regarded by some as having emerged from *Pioneer Investment Services Co. v. Bruns-*

---

**2.** The bankruptcy petition asks for the name of the attorney and/or firm assisting in the filing of the petition. This requirement is not to be confused with section 327's condition that, in order to be paid from the estate, a professional must receive the bankruptcy court's approval of its employment.

wick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court therein construed the meaning of "excusable neglect" as contained in Bankruptcy Rule 9006(b)—which governs the judicial enlargement of Code-prescribed timetables—as "not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Id.* at 391, 113 S.Ct. 1489. Accordingly, the Court counseled against "reading Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent omission." *Id.* at 394, 113 S.Ct. 1489.

Whether *Pioneer* extends to retroactive employment applications, however, is by no means clear—in part because section 327 contains no explicit timing scheme. In finding that *Pioneer* reaches *nunc pro tunc* applications, it was reasoned in *Singson* that such a timing scheme must be read into section 327 else "there is no reason to look askance at an application made after the rendering of services." *Singson* at 320; see also *In re Urban Broadcasting of St. Louis, Inc.,* 174 B.R. 441, 448–449 (E.D.La.1994) (affirming a bankruptcy court's adoption of *Pioneer's* standard of excusable neglect). A bankruptcy court in Massachusetts, however, came to quite a different conclusion—to wit: "Section 327 does not set a time period for the filing of applications to employ; Rule 9006 and *Pioneer* are inapposite." *In re Berman,* 167 B.R. 323, 324 (Bankr.D.Mass. 1994); see also *In re Franklin Savings Corp.,* 181 B.R. 88, 89 (Bankr.D.Kan.1995) (*Pioneer* does not apply to *nunc pro tunc* employment applications which should be reviewed under the extraordinary circumstances test).

In this Circuit, most courts have held that strict compliance with section 327 is excused only in the presence of excusable neglect or unavoidable hardship. See *Amherst Mr. Anthony's Ltd.* at 294; *In re Northeast Dairy Co-op Federation, Inc.,* 74 B.R. 149, 155 (Bankr.N.D.N.Y.1987); *245 Associates, LLC* at 751. Just exactly what that means, however, has yet to be determined, as even

courts which have adopted *Pioneer's* commodious construction acknowledge that such an extension to nunc pro tunc applications "does not automatically follow." *245 Associates, LLC* at 751. At the same time, Judge Kalian's *Piecuil* opinion, although pre-dating *Pioneer,* seems to go a step further in that, while not expressly abandoning the excusable-neglect yardstick, he required simply a "reasonable explanation." 145 B.R. at 783.

■ Arguably, then, a departure from a strict interpretation of section 327 is warranted only upon receipt of a reasonable explanation as to why the neglect at issue should be excused. What seems abundantly clear, however, is that attorney oversight— *i.e.,* simple neglect—does not rise to the dignity of a reasonable explanation.

The overwhelming majority of courts that have considered the issue of attorney oversight or error in this context have found either or both to be an insufficient basis for granting retroactive employment approval. For example, in arguing that "excusable neglect" does not embrace "simple neglect" such as attorney oversight, it is opined in *Singson* that condoning simple neglect would "undermine the functions served by requiring approval." *Singson* at 320.[3] *Pioneer* itself seems not to excuse attorney error or even an "upheaval" in the attorney's practice. 507 U.S. at 398, 113 S.Ct. 1489.

Judge Kaplan himself has seen fit not to abide attorney error. In *In re Becklund,* an unreported opinion, he found that, even where the applicant's work was "excellent, * * * performed in good faith and with utmost diligence," he lacked "sufficient latitude" to approve an application for retroactive employment where the applicant's explanation amounted to "I forgot." No. 83–10628K (W.D.N.Y. filed May 27, 1993). In rejecting the applicant's oversight argument, Judge Kaplan held that the experienced bankruptcy attorneys had failed to meet the *Piecuil* "reasonable explanation" standard. See also *In re Keegan Utility*

---

**3.** The example of "simple neglect" cited in *Singson* was the attorney error deemed excusable by a Massachusetts Bankruptcy Court when it found that "no suggestion has been made that the fail-

ure to seek court approval was anything other than an oversight by counsel for the Debtors." *In re Malden Mills, Inc.,* 42 B.R. 476, 485 (Bankr.D.Mass.1984).

766

*Contractors, Inc.*, 73 B.R. 82, 83 (Bankr. W.D.N.Y.1987) (*nunc pro tunc* approval denied because "two veteran attorneys ignored a most fundamental requirement of bankruptcy practice which they knew or should have known").

In the instant case, Judge Kaplan seeks to distinguish the facts at hand from those in *Becklund* by drawing a distinction between section 327 applications in Chapter 11 and in Chapter 7 situations: "[t]here is simply no analogy between a Chapter 7 trustee's failure to obtain prior approval of his appointment of himself as his own attorney and the failure of a Chapter 11 debtor-in-possession to obtain court appointed counsel." Bankruptcy Court Opinion at 3.

■ This Court does not address the merit of Judge Kaplan's rationale, but instead rejects the distinction he seeks to draw inasmuch as he offers no statutory or judicial support for such analysis and this Court has been unable to find any. Simply put, section 327 pertains both to Chapter 7 and to Chapter 11 cases. 11 U.S.C.A. § 1107(a); *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1283 (5th Cir.1983) (finding that section 1107(a) places the debtor-in-possession in the shoes of a trustee in every way, including the power to employ an attorney only with the cognizant bankruptcy court's approval). Thus, the conclusion that a failure to acquire prior appointment of counsel is less consequential in a Chapter 11 case than in a Chapter 7 setting is, given the current state of the law, facially untenable.

■ Finally, while Appellant misses the mark in her accusations of "burden shifting" by Judge Kaplan, the jurist does indeed turn the tables somewhat on the office of the United States Trustee. Judge Kaplan aptly acknowledges the importance of the United States Trustee's role in monitoring and,

where appropriate, commenting on applications for employment. In this case, it certainly would not have been inappropriate for the United States Trustee to have brought to Judge Kaplan's attention, at some date prior to October 1997, that Appellee had not been appointed. But a careful review of 28 U.S.C. § 586 makes clear that she was under no obligation to do so. Thus, the Trustee's behavior seems from the record to have comported with her statutory obligations.

Although, as suggested above, the Second Circuit Court of Appeals has not had occasion to specify what constitutes an abuse of discretion in the section 327 context, guidance may be found in analogous equity situations. For example, in the matter of imposing sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, such Court has held that a trial court " 'would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.' " *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). In the matter of awarding attorneys' fees—as a parallel example—a lower court must inform the reviewing court as to how it has applied the appropriate legal standard to the facts at bar—*i.e.*, why it acted as it did. See *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir.1997).

This Court finds that Judge Kaplan abused his discretion when he bottomed his assessment of the reasonableness of Appellee's explanation on what he perceived to be the Trustee's breach of duty and on an ill-founded distinction between Chapter 7 and Chapter 11 employment applications. It is unclear to this Court which, if any, of Appellee's explanations Judge Kaplan regarded as sufficient to excuse its neglect.[4]

4. The basis for Judge Kaplan's ruling was stated as follows: "I find that when no one other than the United States Trustee has objected to the retroactive appointment, and where the application is by the attorney for a Chapter 11 debtor-in-possession, and where counsel's inadvertent [sic] failure to obtain employment was compounded by the United States Trustee's failure to object to the failure of the debtor to obtain an order of the court confirming counsel's 'disinterestedness,' and where there transpired two years of vigorous activity by counsel and active participation therein by the United States Trustee (who even made a motion to convert the case at one time but did not include the failure to obtain court-approved counsel as grounds for conversion), and where the case was fully and properly administered as an orderly liquidation that led to

Appellee's work product was certainly adequate if not exemplary—as one would expect from them as seasoned bankruptcy attorneys—and there is no doubt that Platinum benefitted therefrom. But if, as seems the case from the record, the firm's excuse is that it forgot, such is clearly not excusable.[5]

Accordingly, it is hereby *ORDERED* that the award of attorneys' fees is reversed as premature, the *nunc pro tunc* approval of employment is vacated and the case is remanded for further articulation of the legal standard employed and the facts to which that standard is applied.

confirmation of a distribution plan, and where counsel in fact is disinterested, these all combine to provide a 'reasonable explanation' for the delay in seeking approval of employment."

5. At oral argument, attorney Feldman explained that he "can't make a showing that we didn't know the requirements; we knew them intimately. I cannot make a showing that I was unavailable to meet the requirements; I was certainly available to meet the requirements." 11/13/97 Bankruptcy Court Oral Argument Transcript, at 4.